IN RE the MARRIAGE OF: John L.
PETTYGROVE, by his guardian, Pauline Scholl,
Petitioner-Appellant,

v.

Marlene PETTYGROVE, Respondent.

Court of Appeals

*No. 85–0414. Submitted on briefs June 3, 1986.—Decided
July 22, 1986.*

(Also reported in 393 N.W.2d 116.)

For the petitioner-appellant the cause was submitted on the briefs of *Alex B. Cameron,* of La Crosse.

For the respondent the cause was submitted on the briefs of *Johns & Flaherty, S.C.,* by *Ellen M. Frantz,* of La Crosse.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J.   John L. Pettygrove (John), by his guardian Pauline Scholl (Pauline), appeals from a trial court order vacating an oral judgment of divorce that had been rendered approximately one hour after John's death. Because a nonadjudicated divorce action does not survive the death of one of the parties, we affirm.

The facts are uncontroverted. John and Marlene Pettygrove were married in October, 1982. In January, 1984, John commenced this divorce action. Although he testified in person at an adverse deposition in June, 1984, he was subsequently hospitalized with terminal cancer. John's daughter, Pauline, petitioned for guardianship and was appointed immediately prior to the scheduled December 4, 1984 divorce hearing. Thus,

John was represented at the hearing by both his counsel and his guardian.

The hearing began at approximately 9:00 a.m. With the exception of brief testimony given by one of Marlene's witnesses, the entire morning session was devoted to presentation of John's case. The record shows that it was not until approximately 11:50 a.m. that Pauline, the last witness in John's case, testified as to John's critical physical condition:

Q   Where is your father at this time?

A   St. Francis Hospital.

Q   You have been out there to see him in the last day?

A   I was out there until ten o'clock last night.

Q   What is his present physical condition?

A   He's critical.

Q   Do they expect him to live through the day?

A   No, they gave him a 50% chance to make it through the night yesterday. He was holding on this morning. All I know, as far as that goes, there was no pulse or nothing.

John's counsel then requested the trial court to immediately grant the divorce. Marlene's counsel argued that certain property issues were unresolved and asked for a continuance. The trial court, noting that it had been advised in advance of trial that the case would take only half a day,[1] declined to separate the pro-

---

[1] Although the hearing notice is not part of the official record, John's counsel included a copy in the appendix to his appellate

nouncement of divorce from the property settlement. Instead, the trial court determined that "if at all possible this matter should be resolved today," cancelled its afternoon calendar and recessed until 1:30 p.m.

When the court reconvened, Marlene finished her case in one hour. The trial court then recessed from 2:35 p.m. until 3:08 p.m. to read a deposition and prepare its findings. To quote the official transcript:

> (IN OPEN COURT, 3:08 P.M., TUESDAY, DECEMBER 4, 1984)
>
> THE COURT: For the purposes of the record, let the record reflect that it is now ten minutes after three, the afternoon of December 4th, 1984, and the court is now proceeding to grant a divorce in the matter of Pettygrove and Pettygrove.

As his death certificate later verified, John died at 2:05 p.m.

Marlene subsequently moved the trial court to vacate its December 4 judgment. The trial court ruled that neither the common law nor state statutes provide for survival of a divorce action where one party dies before the divorce decree is granted. The court therefore concluded that at 3:10 p.m., December 4, 1984, it was without jurisdiction to enter a divorce decree. Accordingly, the trial court vacated the judgment.

Pauline contends that John's cause of action did not abate. Alternatively, she asserts that the trial court erred in refusing to grant a judgment of divorce at the close of the morning session. We disagree.

---

brief. The notice, dated six weeks prior to the hearing, allocates three hours to the case and is signed by the trial judge.

Although unstated in the record, it is apparent that the trial court's decision to set aside the judgment was based on sec. 806.07(1)(d), Stats. This subsection authorizes a court to vacate a void judgment. A judgment is void if the court rendering it lacked either subject matter or personal jurisdiction. *See Wengerd v. Rinehart,* 114 Wis. 2d 575, 578–79, 338 N.W.2d 861, 864 (Ct.App. 1983). In essence, then, the trial court ruled that its earlier judgment was void because John's death divested the court of jurisdiction.

A trial court has wide discretion in ruling on a motion to vacate a judgment. *Town of Seymour v. City of Eau Claire,* 112 Wis. 2d 313, 322, 332 N.W.2d 821, 825 (Ct.App. 1983). Although discretion is misused if the trial court misapplies or misinterprets the law, *Midwest Developers v. Goma Corp.,* 121 Wis. 2d 632, 650, 360 N.W.2d 554, 563 (Ct.App. 1984), in the instant case both the common law and our statutes support the trial court's decision.

Under the common law, when one party to a divorce proceeding dies during the pendency of the action, the cause of action abates and the court loses jurisdiction. *See Davis v. Rahkonen,* 112 Wis. 2d 385, 387, 332 N.W.2d 855, 856 (Ct.App. 1983). Although no modern Wisconsin case is directly on point, the weight of authority from other jurisdictions is that a cause of action for divorce terminates if either party dies prior to the rendition of judgment granting a divorce. *Novotny v. Novotny,* 665 S.W.2d 171, 173 (Tex. Civ. App. 1983) (citation and emphasis omitted). On the other hand, if a court orally renders a divorce judgment, but one

party dies before the judgment is entered, the decree is still valid. *See Miller v. Trapp,* 485 N.E.2d 738, 740 (Ohio App. 1984) (citations omitted) (in such situations the court may enter the decree *nunc pro tunc* to take effect at a time prior to the party's death).

In this state, our supreme court has reiterated the principle

> that if the court pronounces judgment from the bench, and all that remains to be done is the clerical duty of reducing the judgment to writing or entering the same, or both, the judicial act is complete. So far as the court is concerned, judgment has been rendered notwithstanding the fact that the clerical acts necessary to preserve the evidence of the judgment have not been performed.

*Barbian v. Lindner Bros. Trucking Co.,* 106 Wis. 2d 291, 298–99, 316 N.W.2d 371, 375 (1982) (quoting *Comstock v. Boyle,* 134 Wis. 613, 617, 114 N.W. 1110, 1111 (1908)). Here, it is uncontroverted that the trial court did not render a judgment of divorce until one hour after John died. Because John's cause of action was still pending at the time of his death, the trial court did not err in vacating its subsequent judgment of divorce.

Pauline argues that marriage is a "civil contract," sec. 765.01, Stats., and that contract actions generally survive the death of a party. *Wogahn v. Stevens,* 236 Wis. 122, 127, 294 N.W. 503, 505 (1940). This argument is misplaced. Divorce in Wisconsin is governed by ch. 767, Stats. Jurisdiction of divorce actions is purely statutory, and the authority of the court is confined to those express and incidental powers that are conferred by statute. Sec. 767.01(1); *Siemering v. Siemering,* 95 Wis. 2d 111, 113, 288 N.W.2d 881, 882 (Ct.App. 1980).

There is no provision in ch. 767, Stats., that indicates that a cause of action for divorce survives the death of one of the parties. Further, our omnibus survival statute, sec. 895.01, Stats., does not list divorce among those causes of action that survive. It is well settled that the list of causes enumerated in sec. 895.01(1) is exclusive because "it was never the legislative intent that all actions should survive." *Hanson v. Valdivia,* 51 Wis. 2d 466, 471, 187 N.W.2d 151, 153 (1971) (citation omitted). We conclude, therefore, that John's cause of action was statutory, not contractual, and did not survive his death.

Pauline also contends on appeal[2] that as John's guardian she was empowered to continue to act as his agent in this matter after his death. Alternatively, she argues that fractions of a day are not considered in the legal computation of time.

The first claim is easily refuted. The record shows that Pauline was appointed guardian of both John's person and his estate due to his incompetency. Section 880.34(1), Stats., provides in part that "[a]ny guardianship of an individual found to be incompetent . . . shall continue *during the life of the incompetent,* or until terminated by the court." (Emphasis added.) Section

---

[2] The transcript of the January 2, 1985 hearing on Marlene's motion to vacate the judgment omits the oral arguments of both counsel. The record is similarly barren of any supporting briefs submitted by counsel. Thus, there is no indication that the trial court heard and considered these claims. Due to this deficiency in the record we will exercise our discretion to consider new issues raised for the first time on appeal. *Allen v. Allen,* 78 Wis. 2d 263, 270–71, 254 N.W.2d 244, 248 (1977).

880.26(2)(d), Stats., states that guardianship of an estate terminates when a ward dies. The plain meaning of these two statutes is that Pauline's agency authority in this matter ended with John's death.

The second claim is that the trial court erred by considering the exact hour and minute of John's death instead of measuring time by days; that is, the entirety of December 4, 1984, should have been counted as a full day of John's life. Like other modern courts, we acknowledge the venerable principle that the law generally does not recognize fractions of a day. *Knowlton v. Culver,* 2 Pin. 243, 246 (1849); *State Compensation Insurance Fund v. Building Systems, Inc.,* 713 P.2d 940, 941 (Colo. App. 1985). As the *Knowlton* court explained, however,

> whenever an inquiry into the priority of acts, on the same day, becomes necessary in order to protect the rights of parties, the ordinary presumption must give way to the facts of the case.
>
> This is not properly dividing a day, or taking notice of parts of a day; it is simply taking notice of time, and giving effect to particular acts according to their actual occurrence. . . . *The precise times of entering judgments,* recording deeds, serving attachments, levying under executions, and issuing policies of insurance, *are always deemed proper subjects of inquiry when the rights of parties are affected by the priority of the acts.*

*Knowlton,* 2 Pin. at 246 (citations omitted and emphasis added).

As noted above, the central issue in this case is whether the divorce action abated prior to the rendition of judgment. Because a determination of the exact

time of John's death, and of the precise moment of the judgment of divorce, fundamentally affected the rights of the parties, the trial court properly inquired into these matters.

Finally, Pauline asserts that the trial court misused its discretion when it declined to grant a judgment of divorce at 11:50 a.m. She argues that the statutory requirements for divorce were fulfilled, that the court was aware of John's critical condition, and that John was equitably entitled to a judgment at this time.

Our consideration of this issue is controlled by sec. 767.07, Stats., and by this court's decision in *Roeder v. Roeder,* 103 Wis. 2d 411, 308 N.W.2d 904 (Ct.App. 1981). Section 767.07 provides:

> *A court* of competent jurisdiction *shall grant a judgment of divorce* or legal separation *if:*
>     (1)   The requirements of this chapter as to residence and marriage assessment counseling have been complied with;
>     (2)   The court finds that the marriage is irretrievably broken under s. 767.12(2); and
>     (3)   To the extent it has jurisdiction to do so, *the court has considered,* approved or made provision for . . . *the disposition of property.* [Emphasis added.]

The *Roeder* court held that if a trial court has made the factual findings required by subsections one through three, it *"is obligated* to grant the divorce." *Roeder,* 103 Wis. 2d at 417, 308 N.W.2d at 908 (emphasis in original). On the issue of whether a trial court may grant a divorce prior to a final disposition of the property division, the *Roeder* court concluded:

> *We hold that it may,* but specifically disapprove of the procedure used by this trial court. In this case,

the judgment of divorce was orally rendered before the completion of testimony. Although both parties had testified to the irretrievable breakdown of the marriage, it is clear that testimony on property values was not completed. We feel *the far better practice is to withhold the granting of a divorce until all evidence relevant to any issue in the case is completed.* The trial court may then, from the bench, adjudge the parties divorced and take other issues such as maintenance, child support and custody and property division under advisement.

*Id.* at 418, 308 N.W.2d at 908 (emphasis added).

Procedurally, the instant case is analogous to *Roeder* in that the trial court here was asked, at 11:50 a.m., to orally render a judgment of divorce prior to the completion of testimony. The trial court denied this request, but also declined Marlene's motion for a continuance. It concluded that the reasonable alternative was to cancel the court's afternoon calendar so that the case would be resolved that day.

■ In hindsight one might argue that the best alternative would have been for the trial court to cancel the noon recess as well. Our function, however, is not to engage in hindsight but to determine if the trial court's decision was reasonable under the circumstances. A trial court, in exercising its discretion, may reasonably reach a conclusion which another judge may not reach. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20–21 (1981). The court's decision, however, must be one which a reasonable judge could reach by considering the facts and the relevant law, and by engaging in a process of logical reasoning. *Id.*

Here, the trial court was not advised of John's condition until the *end* of the morning session, even though it is apparent from Pauline's testimony that she was aware of John's precarious state when she arrived at the start of the hearing, some three hours earlier. We cannot tell from the record whether John's counsel knew these facts when the hearing commenced. In any event, we conclude that the trial court's decision was both compatible with the holding of the *Roeder* court and reasonable under the circumstances.

*By the Court.*—Order affirmed.