IN RE the MARRIAGE OF: Sally Ann COX f/k/a Sally Ann Williams, Petitioner-Respondent,†

v.

Debbie WILLIAMS, Appellant,

Daniel Joseph WILLIAMS, Respondent-(In T.Ct.).

Court of Appeals

*No. 91-1295. Submitted on briefs March 26, 1992.—Decided September 17, 1992.*

(Also reported in 490 N.W.2d 774.)

† Petition to review granted.

For the appellant the cause was submitted on the briefs of *Michael B. Van Sicklen* of *Foley & Lardner* of Madison.

For the petitioner-respondent the cause was submitted on the briefs of *H. Robert Kilkelly, Thomas H. Brush* and *Paul W. Schwarzenbart* of *Lee, Kilkelly, Paulson & Kabaker, S.C.* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J.   Debbie Williams, Daniel Williams' widow and Brad Williams' stepmother while Daniel was alive, appeals from an order dismissing her petition under sec. 767.245(1), Stats.,[1] for visitation with her former stepson.[2] The circuit court concluded that it could

---

[1] Section 767.245(1), Stats., provides:

> Upon petition by a grandparent, greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child, the court may grant reasonable visitation rights to that person if the parents have notice of the hearing and if the court determines that visitation is in the best interest of the child.

[2] The respondent argues that Debbie is properly described as a former stepparent. We need not decide whether Debbie is a

not grant Debbie's petition because Daniel's death terminated the court's jurisdiction over the divorce action. We conclude that the circuit court could grant visitation to Debbie under sec. 767.245(1) because the requirements of the statute, as construed in *Van Cleve v. Hemminger,* 141 Wis. 2d 543, 415 N.W.2d 571 (Ct. App. 1987), are satisfied: the family unit was no longer intact and an underlying action affecting the family unit had been previously filed. We reverse the circuit court's order and remand the cause for further proceedings.

## I.

Daniel Williams and Sally Cox were divorced January 3, 1986. Daniel received sole legal custody of their son, Brad. Debbie Williams actively parented Brad from age two until the circuit court transferred legal custody and physical placement to Cox when Brad was approximately eight years old.

When it became apparent by May 31, 1988, that Daniel would ultimately succumb to brain cancer, Cox filed a motion to revise the divorce judgment to provide for joint custody of Brad. She later renewed that motion on December 17, 1990. Daniel died on December 31, 1990, before the court could consider her motion. Debbie did not contest Cox's motion, but petitioned the court pursuant to sec. 767.245(1), Stats., to grant her visitation rights with Brad.

On January 22, 1991, the court amended the divorce judgment and granted sole legal custody of Brad to Cox. On February 23, 1991, the court dismissed Debbie's petition for visitation, holding that Daniel's death deprived

---

stepparent under sec. 767.245(1), Stats., because it is undisputed that she maintained a parent-child relationship with Brad.

the court of jurisdiction to act under sec. 767.245(1), Stats.

## II.

Upon consideration of the principles announced in *Van Cleve,* we conclude that the circuit court had jurisdiction under sec. 767.245(1), Stats., to exercise its discretion to grant or deny Debbie's petition. In *Van Cleve,* a grandparent petitioned for visitation under sec. 767.245(4), Stats. (1985-86).[3] The parents opposed the grandparent's petition. We found that sec. 767.245(4) was ambiguous. *Van Cleve,* 141 Wis. 2d at 547, 415 N.W.2d at 573. We examined the legislative history of the statute and concluded from that history that "the legislature did not intend that the state intervene in the parents' decision regarding their children's best interests *when the family unit is intact." Id.* at 549, 415 N.W.2d at 573 (emphasis added). We therefore construed the right created in sec. 767.245(4) to be limited to cases where an underlying action affecting the family unit has previously been filed. *Id.* at 549, 415 N.W.2d at 573-74.

In *In re Soergel,* 154 Wis. 2d 564, 453 N.W.2d 624 (1990), the Wisconsin Supreme Court approved our decision in *Van Cleve* and denied the grandparents' petition for visitation under sec. 767.245(4), Stats. (1985-86). The court held that the natural mother, the child's adop-

---

[3]Section 767.245(4), Stats. (1985-86) reads:

The court may grant reasonable visitation privileges to a grandparent or greatgrandparent of any minor child upon the grandparent's or greatgrandparent's petition to the court with notice to the parties if the court determines that it is in the best interests and welfare of the child and issue any necessary order to enforce the same.

Section 767.245(4), Stats., was renumbered sec. 767.245(1), Stats., and amended by sec. 38, 1987 Wis. Act 355.

tive father and the child formed an intact family and therefore the grandparents had no visitation rights under our interpretation of sec. 767.245(4) in *Van Cleve.* In *Soergel,* the mother argued that as a result of the termination of the father's parental rights to the child, and her husband's adoption of the child, "an intact family exists that is indistinguishable from a family composed entirely of biologically-related members." *Id.* at 569, 453 N.W.2d at 625. The court agreed that she and the child's adoptive father could determine whether visitation with another was in the child's best interest. *Id.*

The court concluded that the history of sec. 767.245(4), Stats. (1985–86), showed that the legislature intended to codify the decisions in *Weichman v. Weichman,* 50 Wis. 2d 731, 184 N.W.2d 882 (1971) (divorce action), and *Ponsford v. Crute,* 56 Wis. 2d 407, 202 N.W.2d 5 (1972) (custody action). The court concluded, "[t]herefore, this provision [sec. 767.245(4)] applies in divorce or custody cases or in other actions affecting the marriage." *Soergel,* 154 Wis. 2d at 573, 453 N.W.2d at 627. The *Soergel* court said that sec. 767.245(4) did not apply because the adoption of the child "sever[ed] all rights of the adopted child's birth family to the child." *Id.* at 574, 453 N.W.2d at 627.[4]

---

[4]In *In re C.G.F.,* 168 Wis. 2d 62, 483 N.W.2d 803, *cert. denied, H.F. v. T.F.,* 121 L.Ed.2d 333 (1992), the court concluded that *Soergel* was inapplicable to a petition by grandparents for visitation under sec. 880.155, Stats., notwithstanding the child's adoption by a stepparent. *Soergel* was legislatively overruled by 1991 Wis. Act 191 which created sec. 48.925, Stats., permitting the circuit court to grant visitation rights to a relative who has maintained a parent-child relationship with a child who is adopted by a stepparent or relative. Nonetheless, we conclude that *C.G.F.* and 1991 Wis. Act 191 do not undermine the prece-

In *In re Z.J.H.*, 162 Wis. 2d 1002, 1022, 471 N.W.2d 202, 210 (1991), the court again referred approvingly to *Van Cleve*. In *Z.J.H.*, two unmarried women entered into a co-parenting agreement in which they agreed, among other things, that if they separated, the non-placement party would have reasonable and liberal visitation rights with the child adopted by one of them. The court decided that despite the co-parenting agreement, the nonplacement party was not entitled to custody, or to visitation rights under sec. 767.245(1), Stats. The court stated: "While this section does not specifically preclude such an action by a third party, a review of our case law leads to the inescapable conclusion that there must be an underlying action affecting the family unit before the provisions of sec. 767.245(1) are implicated." *Id.* at 1020, 471 N.W.2d at 209.

The *Z.J.H.* court pointed out that there was no action affecting the family unit (e.g., divorce, CHIPS). The court said that the rationale behind *Van Cleve* and *Soergel* "was that the legislature did not intend to override a parent's determination of visitation unless an underlying action affecting the family unit had been filed, because in such an instance, ordering visitation with non-parents may help to mitigate the trauma and impact of a dissolving family relationship." *Id.* at 1022, 471 N.W.2d at 210-11 (citing *Soergel,* 154 Wis. 2d at 571-72, 453 N.W.2d at 627; *Van Cleve,* 141 Wis. 2d at 549, 415 N.W.2d at 574).

In this case, when Debbie petitioned for visitation under sec. 767.245(1), Stats., an underlying action affecting the family unit had been filed—Cox had invoked the jurisdiction of the circuit court to amend the divorce judgment to grant her sole legal custody of Brad. The

dential weight of *Soergel* as applied to petitions for visitation under sec. 767.245(1), Stats.

*Williams'* previously intact family unit of Daniel, Debbie and Brad was dissolved because of Daniel's death. Further, ordering visitation with the person who had parented Brad from age two to eight would help mitigate the trauma and impact of the dissolution of the family caused by the death of Brad's father. Thus, the *Van Cleve* requirements are satisfied.

## III.

Section 767.02(1), Stats., enumerates the actions affecting the family:

> Actions affecting the family are:
>
> . . ..
> (c)   Divorce.
>
> . . ..
> (e)   Custody.
>
> . . ..
> (i)   To enforce or modify a judgment or order in an action affecting the family granted in this state or elsewhere.[5]
>
> . . ..
> (k)   Concerning periods of physical placement or visitation rights to children.

In this case, the judgment of divorce was entered January 3, 1986. The parties stipulated that Daniel would have legal custody of Brad, subject to the mother's reasonable and liberal rights of visitation. That stipulation was incorporated in the judgment. On May 31, 1988, Cox filed a motion pursuant to sec. 767.325, Stats., to revise the divorce judgment to grant her joint legal custody, because of Daniel's deteriorating physical condi-

---

[5]Under sec. 767.325, Stats., the circuit court has jurisdiction to modify the provisions of a divorce judgment respecting legal custody and physical placement.

tion. On June 20, 1988, the circuit court referred the matter to Family Court Counseling Service to evaluate and resolve the custody issue through mediation and counseling.

On May 21, 1990, Cox and Daniel stipulated to an amendment of the divorce judgment to grant greater periods of physical placement of Brad with Cox because of Daniel's deteriorating health. On September 6, 1990, Daniel filed a motion to enforce the physical placement provision of the amended judgment, because of Cox's alleged interference with physical placement.

On September 27, 1990, Cox and Daniel agreed to resolve their dispute by further amending the judgment to provide that legal custody of Brad would remain with Daniel, with certain exceptions, and prescribing a very specific physical placement schedule. An order so amending the judgment was entered October 2, 1990.

On November 30, 1990, the guardian ad litem suggested by letter to the parties that because of Daniel's failing health, it would be appropriate to begin discussions regarding visitation following Daniel's death. On December 17, 1990, Cox again moved under sec. 767.325, Stats., to amend the divorce judgment to provide for joint legal custody of Brad.

Following Daniel's death on December 31, 1990, the court transferred custody of Brad to Cox on January 3, 1991, by oral order. On January 25, 1991, the court amended the divorce judgment to effect the transfer. The court also continued a prior order designating a mediator to mediate any dispute between Cox and Debbie as to Debbie's visitation rights under sec. 767.245, Stats. The order provided that the mediator's recommendations were binding on the parties until further order of the court.

Prior to these orders, on January 17, 1991, Debbie petitioned the court pursuant to sec. 767.245(1), Stats., for an order awarding her reasonable visitation with Brad. On January 22, 1991, the court entered an interim order that provided for visitation with Brad by Debbie.

On March 1, 1991, the circuit court vacated its temporary January 22, 1991 order allowing Debbie's visitation. Relying on *Van Cleve,* the court concluded it did not have statutory authority to grant Debbie visitation rights after the death of Brad's father. On March 4, 1991, the circuit court denied Debbie's petition for visitation. Thereafter, on May 31, 1991, Debbie moved the court for relief pending appeal to allow her to have continuing visitation with Brad. (The record does not contain an order disposing of this motion.)

██

All of the foregoing proceedings occurred in the underlying divorce action. We conclude that *Van Cleve's* requirement that visitation under sec. 767.245(1), Stats., may be granted only when there is an underlying action affecting the family is satisfied in this case, whether the "underlying action" affecting the Williams family is considered a divorce action, sec. 767.02(1)(c), Stats.; a custody action, sec. 767.02(1)(e), Stats.; or an action to modify a judgment in an action affecting the family, sec. 767.02(1)(i), Stats.

This is not a *Van Cleve* or *Soergel* case. Debbie is not an interloper attempting to intrude upon an intact family unit. Prior to Daniel's death, the family unit consisted of Daniel, Debbie and Brad. Cox had no right to make major decisions as to Brad. *See* sec. 767.001(2)(a) and (2m), Stats. Cox was limited to making routine daily decisions when Brad was placed with her. Section 767.001(5), Stats. We conclude that because of the imminence of Daniel's death, the intact family relationship

was dissolving and in that situation, "[i]t [was] appropriate for the state to protect the children's best interests by ordering visitation with appropriate adults to mitigate the trauma and impact of a dissolving family relationship." *Van Cleve,* 141 Wis. 2d at 549, 415 N.W.2d at 574.[6]

We consider that in denying Debbie's petition, the circuit court incorrectly focused on its subject matter jurisdiction rather than the extent of its authority under sec. 767.245(1), Stats. In its oral decision, the court said: "[A]t the time of the death of one of the parties . . . this Court is done. So for all of those reasons, I conclude that I don't have jurisdiction and that Section 767.245 does not give statutory authority for the petition that has been filed in this divorce case after the death of the natural father."

Section 767.01(1), Stats., gives circuit courts jurisdiction of all actions affecting the family. The Wisconsin Supreme Court has said: "No circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever." *Mueller v. Brunn,* 105 Wis. 2d 171, 176, 313 N.W.2d 790, 792 (1982).

---

[6]If Debbie and Daniel had divorced, it is clear that the circuit court under sec. 767.245(1), Stats., could have granted Debbie visitation with Brad: the *Van Cleve-Soergel-Z.J.H.* "underlying action" requirement would have been satisfied. It would be anomalous and unreasonable to construe sec. 767.245(1) to deny the circuit court that authority when the intact family is dissolved because of the custodial parent's death. An unreasonable construction of a statute is to be avoided. In re Dewerth, 132 Wis. 2d 29, 42, 390 N.W.2d 575, 580 (Ct. App. 1986), *aff'd,* 139 Wis. 2d 544, 407 N.W.2d 862 (1987). We also note that in 1991 Wis. Act 191 the legislature has expressed its intent that the relationship between a stepparent and stepchild is deserving of protection. Under sec. 48.925, Stats. (1991), a stepparent, a "relative" by definition under sec. 48.02(15), Stats., may be granted visitation if the stepchild is adopted by another relative or stepparent.

The circuit court expressed doubt that it was necessary upon the death of the custodial parent to amend the custody provision of a divorce judgment to award legal custody to the surviving natural parent. Cox cites the dictum in *Sass v. Sass,* 246 Wis. 272, 275, 16 N.W.2d 829, 830 (1944), a factually similar case: "Maybe [the trial court] had no jurisdiction to amend the terms of the original judgment so far as it awarded the child's custody to the mother by striking that provision and substituting therefor a provision granting custody to the [surviving] father." Cox acknowledges that the *Sass* court sustained the trial court's order awarding custody to the surviving natural parent by treating the trial court's judgment as "in effect one in *habeas corpus.*" *Id.* at 276, 16 N.W.2d at 831.[7]

Cox concedes that: "Plainly, as in *Sass,* the circuit court possessed authority to restore Brad's custody to [Cox] after the death of Brad's father. This exercise of authority does not revive the divorce action and allow [Debbie] to intervene in it." However, sec. 767.245(1), Stats., allows certain parties to "intervene" in actions affecting the family which involve children to gain visitation rights. These parties include a grandparent, great-grandparent, stepparent or person who has maintained a relationship with the child similar to a parent-child rela-

---

[7]The *Sass* court explained its holding as follows:

The trial court had jurisdiction of the subject matter of the action. . . . A court having jurisdiction of the subject matter of an action or proceeding, and having jurisdiction of the persons against whom relief is demanded, will entertain jurisdiction to give the relief, regardless of the theory of the pleader, and regardless of the form of the proceedings in which relief is sought, whenever the pleadings before it show the person asking relief entitled to it. The case being before the court, the court will not throw the complainant out merely because he entered by the wrong door.

246 Wis. at 276, 16 N.W.2d at 830.

tionship. "Intervention" is accomplished by petition to the court and notice to the parent or parents. These requirements were met in this case.

We need not decide whether the *Sass* dictum correctly states the law. Whether Cox entered the court by the wrong door or through a door she need not have opened is irrelevant. She invoked the jurisdiction of the circuit court to amend the divorce judgment to award her sole legal custody of Brad. The circuit court, correctly, did not throw her out. Her presence in the court seeking a custody change satisfied the "underlying action" requirement. Further, a petition under sec. 767.245(1), Stats., may be presented in an action affecting the family other than a divorce action. In *Soergel,* the court concluded that the visitation statute applied not only in divorce cases, but in custody cases "or in other actions affecting the marriage."[8] *Soergel,* 154 Wis. 2d at 573, 453 N.W.2d at 627. The *Z.J.H.* court included CHIPS cases as actions affecting the family in which a petition under sec. 767.245(1) was proper. *Z.J.H.,* 162 Wis. 2d at 1020, 471 N.W.2d at 209. We believe that in this case the court proceedings dealing with the custody of Brad, and visitation between Brad and Debbie, constituted an action affecting the family.

---

[8]Section 767.24(1), Stats., makes clear that a person may maintain an independent action for custody. The statute provides:

> In rendering a judgment of annulment, divorce or legal separation, *or in rendering a judgment in an action under s. 767.02(1)(e),* [custody] the court shall make such provisions as it deems just and reasonable concerning the legal custody and physical placement of any minor child of the parties, as provided in this section. [Emphasis added.]

■

We conclude that the circuit court had subject matter jurisdiction over the matter of visitation between Debbie and Brad. It is undisputed that the court had personal jurisdiction of the parties. Therefore, the circuit court should have analyzed Debbie's standing to invoke the court's authority to grant her visitation upon her petition under sec. 767.245(1), Stats., by considering the legislative purpose of the statute as declared in *Van Cleve, Soergel* and *Z.J.H.* Because the construction of a statute is a question of law, we make that analysis.

■

As noted, the "underlying action" criterion of *Van Cleve-Soergel-Z.J.H.* is satisfied in this case. The second criterion which a sec. 767.245(1), Stats., petitioner must meet under *Van Cleve-Soergel-Z.J.H.* is that there be a "dissolving family relationship" so that the child's best interests may be protected by ordering visitation "to mitigate the trauma and impact of a dissolving family relationship." *Van Cleve,* 141 Wis. 2d at 549, 415 N.W.2d at 574. It cannot be seriously argued that Daniel's death and the transfer of physical custody of Brad from Debbie to Cox did not dissolve the Williams family, or that trauma to the family and to Brad did not occur. The dissolution continued over several years. The record shows that the court and the Family Court Counseling Service were actively involved in preparing for the eventuality of Daniel's death. The periods of physical placement of Brad with Cox were increased, Brad received counseling,[9] and visitation was granted to Debbie in the interim period until Daniel's expected death.

---

[9]Affidavits in the record from Brad's school social worker and a treating psychologist reveal his confusion and emotional distress at his father's death and surrounding circumstances. It is unlikely the involvement of therapists would have been necessary

██
We are satisfied that the purpose of sec. 767.245(1), Stats., as declared by the *Van Cleve, Soergel* and *Z.J.H.* courts was met by Debbie Williams' petition in this case. Of course, whether to grant Debbie's petition is in the discretion of the circuit court.

## IV.

██
Cox makes a final argument that we must address. She claims that the existence of sec. 880.155, Stats.,[10] negates a legislative intention that sec. 767.245(1), Stats., applies when the dissolution of a family results from the death of a parent. Section 880.155 permits the circuit court to grant visitation privileges to a grandparent if one or both parents are deceased. Cox relies on the *Van Cleve* court's comparison of sec. 880.155, Stats. (1985-86), and sec. 767.245(4), Stats. (1985-86). *See Van Cleve,* 141 Wis. 2d at 547-48, 415 N.W.2d at 573. When *Van Cleve* was decided, sec. 767.245(4) permitted visitation privileges only to grandparents and great-grandparents. Section 767.245(1) has been greatly expanded and the *Van Cleve* "superfluous" analysis is no longer apposite.

---

at all had the dissolution of Brad's family not caused associated trauma.

[10]Section 880.155, Stats., provides:

> If one or both parents of a minor child is deceased and the minor is in the custody of the surviving parent or any other person, any grandparent of the minor may petition for visitation privileges with respect to the minor, whether or not the person with custody is married. The court may grant reasonable visitation privileges to a grandparent if the court determines that it is in the best interests and welfare of the child, may issue any necessary order to enforce the same, and may from time to time modify such privileges or orders upon a showing of good cause.

*By the Court.*—Order reversed and cause remanded.

GARTZKE, P.J. *(dissenting).* On December 31, 1990, Brad's father died. Debbie petitioned for visitation in January 1991. The intent of sec. 767.245(1), Stats., is to include "parent-like individuals in the group of people who may qualify for visitation rights to a minor child when an underlying action affecting the marriage exist[s]." *In re Z.J.H.,* 162 Wis. 2d 1002, 1023, 471 N.W.2d 202, 211 (1991). The father's death terminated the only underlying action affecting the marriage before Debbie petitioned for visitation. Accordingly, the trial court could not grant visitation to Debbie under sec. 767.245(1).