IN RE the MARRIAGE OF: Sally Ann COX f/k/a Sally Ann Williams, Petitioner-Respondent-Petitioner,

v.

Debbie WILLIAMS, Appellant,

Daniel Joseph WILLIAMS, Respondent-(In Trial Court).

Supreme Court

*No. 91–1295. Oral argument May 25, 1993.—Decided June 23, 1993.*

(Also reported in 502 N.W.2d 128.)

For the petitioner-respondent-petitioner there were briefs by *H. Robert Kilkelly, Thomas H. Brush, Paul W. Schwarzenbart* and *Lee, Kilkelly, Paulson & Kabaker, S.C.,* Madison and oral argument *Mr. Brush.*

For the appellant there was a brief by *Michael B. Van Sicklen* and *Foley & Lardner,* Madison and oral argument by *Mr. Van Sicklen.*

STEINMETZ, J. The issue in this case is whether a former stepparent has standing under sec. 767.245, Stats.,[1] or sec. 880.155[2] to seek court-ordered visitation of the child of her deceased husband and his first wife. We conclude that a former stepparent lacks such standing.

Dan Williams and Sally Cox were married on March 28, 1981. They had a child, Brad Williams, who was born on August 9, 1982. Sally filed a petition for divorce from Dan on July 22, 1985. The divorce judgment was entered on January 3, 1986.

---

[1] Section 767.245, Stats., provides as follows:

**767.245 Visitation rights of certain persons. (1)** Upon petition by a grandparent, greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child, the court may grant reasonable visitation rights to that person if the parents have notice of the hearing and if the court determines that visitation is in the best interest of the child.

**(2)** Whenever possible, in making a determination under sub. (1), the court shall consider the wishes of the child.

[2] Section 880.155, Stats., provides as follows:

**880.155 Visitation by grandparents.** If one or both parents of a minor child is deceased and the minor is in the custody of the surviving parent or any other person, any grandparent of the minor may petition for visitation privileges with respect to the minor, whether or not the person with custody is married. The court may grant reasonable visitation privileges to a grandparent if the court determines that it is in the best interests and welfare of the child, may issue any necessary order to enforce the same, and may from time to time modify such privileges or orders upon a showing of good cause.

In the divorce judgment, the court found that both Dan and Sally were fit and proper persons to have custody of Brad, but until further order of the court, Dan was awarded care and custody of Brad with "reasonable and liberal rights of visitation" granted to Sally upon 24 hours prior notice. The court's findings of fact and conclusions of law in regard to Brad's custody were based upon the parties' final stipulation.

On May 31, 1988, Sally filed a motion seeking joint legal custody of Brad. Sally's motion was based upon the fact that Dan had become seriously ill[3] and his condition was likely to degenerate. The motion also alleged that although Dan still had legal custody of Brad, Dan and Sally had a visitation schedule whereby Brad resided with Sally for three nights per week and with Dan for four nights per week.

The dispute over custody between Dan and Sally continued through 1988 and 1989. On February 14, 1990, Dan married the appellant, Debbie Williams. An agreement to amend judgment, dated September 17, 1990, states that Brad's physical placement at that time was with Sally from 8:00 a.m. Monday until 8:00 a.m. Wednesday and with Dan from 8:00 a.m. Wednesday until 8:00 a.m. Friday. Brad's placement alternated between Sally and Dan on weekends.

On December 28, 1990, Sally renewed her motion for joint legal custody. Dan died on December 31, 1990. By order dated January 22, 1991, the trial court confirmed its January 3, 1991, oral order from the bench which transferred legal custody of Brad to Sally.

On January 17, 1991, Debbie filed a petition for stepparent visitation with respect to Brad pursuant to sec. 767.245, Stats. She filed said petition in the

---

[3] Dan was eventually diagnosed as having brain cancer.

divorce action between Sally and Dan after Dan's death, even though she was not a party to that action.

Debbie's petition was supported by her affidavit which states that she was Brad's stepparent by virtue of her February 14, 1990, marriage to Dan. The affidavit also states that Debbie had been actively involved in parenting Brad since July, 1985 (when Brad was almost three years of age), that Debbie had lived with Dan and Brad since August 1986, and that Dan had nominated Debbie to serve as Brad's guardian in his last will.[4]

Sally objected to Debbie's petition. In an affidavit filed on February 11, 1991, Sally alleged that Brad was not "faring well" under the visitation schedule temporarily in place pending the hearing on Debbie's petition. The schedule provided that Brad spend one-half of his time with Debbie. Sally also alleged that she did not have a very good relationship with Debbie and that she and Debbie had different parenting ideas and child-rearing techniques. Sally's concern that Debbie sought to act as Brad's coparent was illustrated by a deposition transcript filed along with the affidavit, in which Debbie stated that she had the right to make parenting decisions for Brad when he was with her.

The Dane county circuit court, the Honorable Angela B. Bartell, concluded that it lacked authority to consider Debbie's petition for stepparent visitation. The court of appeals reversed holding that the trial court had such authority. *In re Marriage of Cox v. Williams,* 171 Wis. 2d 227, 490 N.W.2d 774 (Ct. App. 1992). We accepted Sally's petition for review.

---

[4] The dissent makes much of the fact that Dan named Debbie to serve as Brad's guardian. However, the dissent does not explain how Debbie could become Brad's guardian while he has a natural, living parent.

A person has standing to seek nonparent visitation under sec. 767.245(1), Stats., when two circumstances are present: first, an "underlying action affecting the family unit has previously been filed"; and second, the child's family is nonintact, so that it may be in the child's best interests to order visitation "to mitigate the trauma and impact of [the] dissolving family relationship." *See Van Cleve v. Hemminger,* 141 Wis. 2d 543, 549, 415 N.W.2d 571 (Ct. App. 1987); *In re Interest of Z.J.H.,* 162 Wis. 2d 1002, 1020–23, 471 N.W.2d 202 (1991). Neither circumstance is present in this case.

No underlying action affecting the family exists in this case. Judicial authority over custody and visitation of Brad arose when Sally filed a petition seeking a divorce from Dan. *See* secs. 767.01, 767.02, Stats. The court exercised its judicial authority when it pronounced Dan and Sally fit and proper persons to have the custody of Brad and when the court awarded Dan custody pursuant to the parties' stipulation. Judicial authority as to visitation and custody of Brad continued after Sally and Dan's divorce because secs. 767.32 and 767.325, allow for revision of judgments.

However, jurisdiction over divorce actions terminates upon the death of one of the parties. *Marriage of Pettygrove v. Pettygrove,* 132 Wis. 2d 456, 461–63, 393 N.W.2d 116 (Ct. App. 1986). In *Pettygrove,* citing sec. 767.01(1), Stats., the court of appeals observed that "[j]urisdiction of divorce actions is purely statutory, and the authority of the court is confined to those express and incidental powers that are conferred by statute." *Id.* at 462. Because no statutory authority indicated that divorce actions survive the death of one

439

of the parties, the court of appeals held that a court's jurisdiction over a divorce action terminates in that circumstance. *Id.* at 463.

It follows from *Pettygrove* that the circuit court's postjudgment authority over visitation of Brad expired upon Dan's death. Thus, Debbie Williams, Dan's second spouse, was not and could not be a party to the divorce action between Dan and Sally.

■

The second prong of the *Van Cleve* test is also not satisfied because after Dan's death, Brad's family was intact. In *Barstad v. Frazier,* 118 Wis. 2d 549, 556–57, 348 N.W.2d 479 (1984), we stated that "[b]oth this court and the United States Supreme Court have recognized that the relationship between a parent and a child is a constitutionally protected right." " '[T]he custody, care and nurture of the child resides first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' " *Id.* at 558 (quoting *Quilloin v. Walcott,* 434 U.S. 246, 255 (1978)). The " 'usual understanding of "family" implies biological relationships, and most decisions treating the relation between parent and child have stressed this element.' " *Id.* at 561 (quoting *Smith v. Organization of Foster Families,* 431 U.S. 816, 843 (1977)).

Accordingly, because of Dan's death and the trial court's finding that Sally is a fit and proper person to have custody of Brad, all of the parental rights as to Brad rest with Sally. Brad's family is intact because the parental relationship exists solely between Sally and Brad: *i.e.,* between the natural mother and child.

■

Section 767.245, Stats., is not applicable to the instant facts. Debbie's relationship with Brad did not

arise as a consequence of the marriage between Dan and Sally in whose divorce Debbie filed her petition. Debbie's relationship with Brad arose as a result of her relationship with Dan. Had Debbie and Dan divorced, sec. 767.245, would be applicable because Debbie's relationship with Brad would have arisen out of her relationship with Dan and that relationship would have been affected by her divorce from Brad's father: *i.e.,* the underlying action affecting the family. Visitation by Debbie is derivative of her relationship with Dan. It is therefore reasonable to conclude that such visitation must be treated differently upon the death of (as opposed to divorce or separation from) the person through whom the privilege derives.

In sec. 880.155, Stats., the legislature created a specific statutory remedy to govern visitation in the event of a natural parent's death. Since Debbie does not fall within the class of persons entitled to petition for visitation under sec. 880.155, the trial court correctly concluded that Debbie lacked standing and that it lacked authority to consider her petition.

In summary, the trial court lacked authority to consider Debbie's petition because there was no underlying action affecting the family and Brad's family was intact. Section 880.155, Stats., governs visitation in the event of a natural parent's death. Debbie is not a member of the class entitled to petition for visitation under that section.

*By the Court.*—The decision of the court of appeals is reversed.

HEFFERNAN, CHIEF JUSTICE *(dissenting).* The majority has relied upon a decision of this

court and a decision of the court of appeals to reach a conclusion that, under the facts of this case, is inappropriately grotesque and contrary to an unmistakable mandate of the legislature. If the law is construed as the majority has construed it, the words of Charles Dickens in *Oliver Twist* are pertinent, "If the law supposes that . . . the law is a ass, a idiot."

I also join in the dissent of Justice WILLIAM A. BABLITCH.

I am authorized to state that Justice WILLIAM A. BABLITCH joins in this dissent.

SHIRLEY S. ABRAHAMSON, J.   *(dissenting)*. I dissent, adopting the reasoning of the court of appeals. The circuit court could grant visitation to Debbie Williams under sec. 767.245(1) because the requirements of the statute as construed in *Van Cleve v. Hemminger,* 141 Wis. 2d 543, 415 N.W.2d 571 (Ct. App. 1987), are satisfied: The family unit was no longer intact and an underlying action affecting the family had been previously filed. Permitting Debbie Williams to petition for visitation serves the legislative intent underlying the statute.

For the reasons stated above, I dissent.

WILLIAM A. BABLITCH, J.   *(dissenting)*. The relevant statute in this case is clear and unambiguous: "Upon petition by a . . . stepparent . . . the court may grant reasonable visitation rights. . . . if the court determines that visitation is in the best interest of the child." Section 767.245(1), Stats. This case is about the right of a stepparent to be heard by a court. Despite the clarity of this statute, despite the stepparent, along with the father, actively parenting the child for six years, and despite the child's father naming the stepparent as legal guardian in his Last Will, the majority

denies the stepparent, Debbie Williams, an opportunity to petition the court for visitation rights. Neither she, nor the child, can even be heard. Harsh. Unnecessary. Absurd.

It is a harsh result for the child. Brad has had three important adult figures in his life: his father, who he lost to brain cancer when he was eight years old; his stepmother, who parented him from age 2 to his father's death, 6 years later; and, his mother who obtained legal custody upon the death of Brad's father. Having had his father taken from him by his father's untimely death, this decision deprives Brad of one of the two remaining important adults in his life, and does so without ever allowing a circuit court to determine what is in his best interest, and without ever allowing Brad himself, now eleven years of age, to tell a court what he thinks about all of this.

It is an unnecessary result. Neither statutory law nor our own case law compels this result. To the contrary, statutory law, *on its face,* compels an opposite result. Section 767.245, Stats., unambiguously states that any "stepparent or person who has maintained a relationship similar to a parent-child relationship with the child . . ." may petition the court for reasonable visitation rights. The majority in this case denies the stepparent from even petitioning the court. To reach this result, the majority relies on previous Wisconsin cases which grafted onto the law two conditions which must be satisfied to seek nonparent visitation to which the statute on its face never refers: (1) an underlying action affecting the family unit has previously been filed; and (2) the child's family is nonintact. *See Van Cleve v. Hemminger,* 141 Wis. 2d 543, 549, 415 N.W.2d 571 (Ct. App. 1987); *In re Interest of Z.J.H.,* 162 Wis. 2d 1002, 1020–23, 471 N.W.2d 202 (1991). The majority

depends on both conditions. Even if I agreed with the majority that these two conditions must be present for the statute to be operative, I conclude that both conditions were met. As to the first, the majority says that "[n]o underlying action affecting the family exists in this case." *In re the Marriage of Sally Ann Cox v. Debbie Williams,* Majority op. at 439. I agree with the court of appeals that when Debbie petitioned for visitation under sec. 767.245(1) an underlying action affecting the family unit had been filed. As to the second condition, the majority says "after Dan's death, Brad's family was intact." *Id.* at 440. Intact? The family Brad knew since he was two years old, his father and stepmother, had come apart due to his father's death. This is intact?

It is an absurd result. Even the majority is forced to admit that had Debbie commenced divorce proceeding with Dan prior to Dan's death, a petition for visitation pursuant to sec. 767.245, Stats., would be appropriate. *Id.* at 440–441. If that absurdity is the law, and it is so long as the majority says it is, the results would be laughable if they were not so tragic. The majority is telling stepparents to file divorce proceedings against their spouse, even if they never intend to follow through on the divorce, in order to protect their right to be heard by a court of law with respect to visitation of a stepchild. The legislature could never have intended such an absurd result. I dissent.

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN joins in this dissent.