IN RE the MARRIAGE OF: Margaret E. KOELLER, Petitioner-Respondent,

v.

Ralph C. KOELLER, Respondent-Appellant.

Court of Appeals

*No. 94–2834. Submitted on briefs April 6, 1995.—Decided June 29, 1995.*

(Also reported in 536 N.W.2d 216.)

For the respondent-appellant the cause was submitted on the briefs of *Linda Roberson* of *Balisle & Roberson, S.C.,* of Madison.

For the petitioner-respondent the cause was submitted on the brief of *Stephen R. Buggs* of *Karrmann, Buggs & Baxter* of Platteville.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J. Ralph Koeller appeals from a judgment modifying the custody provisions of a 1988 judgment divorcing him from Margaret Koeller. The divorce judgment awarded sole custody of the couple's two minor children to Margaret. Because she is suffering from a terminal cancer and Ralph has a history of mental illness, Margaret moved the court to revise the judgment to grant custody of the children to her sister, Virginia Yribia, in the event of her incapacity or death.

The trial court granted the motion and Ralph appeals, claiming: (1) the court erred as a matter of law by making a "prospective" and "contingent" custody award without legal authority to do so; (2) the court erroneously exercised its discretion by failing to follow

661

correct legal standards in rendering its decision; and (3) there was insufficient evidence to support the court's determination that Ralph is unable to care for the children on a full-time basis. We conclude that the trial court's prospective custody judgment is void per se and we therefore reverse the judgment.[1]

The parties' two minor children were six and eight years old at the time of the divorce, and are now thirteen and fifteen. In 1985, Margaret was diagnosed with a terminal cancer, and in 1993, desiring to resolve the children's custody situation while she was still alive, she requested the custody change.

As indicated, Ralph Koeller has a history of mental illness. He has been diagnosed as having a bipolar schizo-affective disorder and has been hospitalized several times after experiencing "psychiatric episodes."[2] At the custody modification hearing, there was conflicting expert testimony as to Ralph's ability to care for the children. The trial court concluded that while Ralph was "not . . . an unfit parent," he would not be able to care for the children full time in the event of Margaret's death or incapacity.

Specifically, the trial court found that because Margaret was suffering from a terminal cancer, it was "necessary for the best interest of the children to make provisions for their custody and physical placement in case their Mother . . . dies or becomes incapacitated so as to eliminate uncertainty as to what will happen if

---

[1] Because we conclude that the judgment is void per se, we need not address the issue of the sufficiency of the evidence concerning Ralph's ability to care for the children on a full-time basis.

[2] There was evidence that Ralph was hospitalized for the condition in 1970, three times in 1986, and once in 1987, 1993 and 1994.

that occurs." Declaring Virginia Yribia to be "a suitable, proper, and fit person to have custody of the children if [Margaret] is deceased," the court found that "under those circumstances . . . the children would be . . . in need of protective services [and t]heir best interest would be served by transferring custody and primary placement to [Yribia]." The court then entered the following order:

> Contingent Custodian: If [Margaret] dies or becomes so disabled that she is unable to care for the minor children of the parties, then custody shall transfer to Virginia Yribia of Denver, Colorado, who will have primary physical placement subject to unsupervised [visitation] for four weeks in the summer plus other temporary physical placement determined upon further application by [Ralph].

The trial court grounded its order on § 767.24(3), STATS., which provides as follows:

> If the interest of any child demands it, and if the court finds that neither parent is able to care for the child adequately or that neither parent is fit and proper to have the care and custody of the child, the court may declare the child to be in need of protection or services and transfer legal custody of the child to a relative of the child . . . . If the court transfers legal custody of a child under this subsection, in its order the court shall notify the parents of any applicable grounds for termination of parental rights . . . .

 Custody determinations are matters within the trial court's discretion and will be sustained on appeal where the court exercises its discretion on the basis of the law and the facts of record and employs a logical

rationale in arriving at its decision. *Licary v. Licary,* 168 Wis. 2d 686, 692, 484 N.W.2d 371, 374 (Ct. App. 1992). A court erroneously exercises its discretion, however, when it bases its determination on an error of law. *Id.*

■

Because there is no common-law jurisdiction over the subject of divorce in Wisconsin, such powers that Wisconsin courts possess in this area are "entirely dependent on legislative authority . . . ." *Groh v. Groh,* 110 Wis. 2d 117, 122, 327 N.W.2d 655, 658 (1983). And "where the legislature has set forth a plan or scheme as to the manner and limitation of the court's exercise of its jurisdiction, that expression of the legislative will must be carried out and power limitations adhered to." *Id.* at 123, 327 N.W.2d at 658. Thus, "[a]lthough the trial court has a broad discretion with respect to custody determinations, which will be given great weight on review, 'courts have no power in awarding custody of minor children other than that provided by statute.' " *Schwantes v. Schwantes,* 121 Wis. 2d 607, 622, 360 N.W.2d 69, 76 (Ct. App. 1984) (quoted sources omitted).

Citing *Cox v. Williams,* 177 Wis. 2d 433, 439-40, 502 N.W.2d 128, 130 (1993), the guardian ad litem attempts to justify the trial court's order as a valid exercise of its "incidental powers" under ch. 767, STATS. Ralph argues that no such authority exists.[3] We agree.

---

[3] Margaret claims that Ralph waived any challenge to the trial court's authority to enter the order by failing to assert any "jurisdictional" challenges in the trial court proceedings.

Waiver is "a rule of judicial administration which we may, in the proper exercise of our discretion, choose not to employ" in a given case. *Department of Revenue v. Mark,* 168 Wis. 2d 288, 293 n.3, 483 N.W.2d 302, 304 (Ct. App. 1992). Because Ralph's

In *Dovi v. Dovi*, 245 Wis. 50, 53, 13 N.W.2d 585, 587 (1944), noting that divorce jurisdiction is statutory in origin, the supreme court stated that the circuit court's authority in divorce cases "is confined altogether to such express *and incidental* powers as are conferred by statute." (Emphasis added.) The statement has been repeated many times since,[4] but no decision has defined just what these "incidental powers" are or where and how they originate.

As Ralph points out, neither § 767.24(3)(a), STATS., nor any other relevant statute or case states, or even suggests, that a change in custody may be ordered contingent upon the occurrence of some anticipated event or premised upon a prospective finding that someday a parent will be unable to meet his or her parental responsibilities.

Section 767.24(2), STATS., authorizes the court to grant sole or joint custody to a parent or parents in a divorce action on the basis of "the best interest of the child" and the court's consideration of several factors specifically set forth in the statute, such as the child's "interaction and interrelationship" with those people central to his or her life, the child's adjustment to home, school and community, and the "mental and physical health of the parties . . . and other persons

arguments challenge the legal authority for the trial court's order, we will consider them.

[4] *See, e.g., Cox v. Williams*, 177 Wis. 2d 433, 439, 502 N.W.2d 128, 130 (1993); *Groh v. Groh*, 110 Wis. 2d 117, 122-23, 327 N.W.2d 655, 658 (1983); *Haack v. Haack*, 149 Wis. 2d 243, 249, 440 N.W.2d 794, 796 (Ct. App. 1989); *Pettygrove v. Pettygrove*, 132 Wis. 2d 456, 462, 393 N.W.2d 116, 119 (Ct. App. 1986); *Siemering v. Siemering*, 95 Wis. 2d 111, 113, 288 N.W.2d 881, 882 (Ct. App. 1980).

living in a proposed custodial household."[5] Section 767.24(5). Section 767.24(3) authorizes the court to transfer custody to a non-parent—as in this case, a "relative of the child"—on the basis of a finding that "neither parent *is* able to care for the child . . . or that neither parent *is* fit and proper to have . . . custody . . . ." (Emphasis added.) Finally, § 767.325(1), STATS., authorizes the court to change custody (1) within two years of the initial award upon a showing that the change "*is* necessary because the *current* custodial conditions *are* physically or emotionally harmful . . . to the child," and (2) after the initial two-year period, if the change "*is* in the best interest of the child" and there has been "a substantial change of circumstances since the entry of the last order affecting . . . custody . . . ." (Emphasis added.)

We believe these statutory provisions must be read to embody a sense of contemporaneity in custody determinations, whether in original or modification proceedings. As we have said, while the cases do not define or discuss what constitutes an "incidental" power, they uniformly state that the only powers that exist in divorce courts are " 'those express and incidental powers *that are conferred by statute.*' " *See Cox,* 177 Wis. 2d at 439, 502 N.W.2d at 130 (emphasis added) (quoted source omitted). Additionally, the term "incidental" is defined in law dictionaries as "[d]epending upon or appertaining to something else as primary;

[5] Other factors to be considered include the child's wishes, the parents' wishes, the availability of public or private childcare services, the likelihood of interference with the child's relationship with the other parent, whether either party has a significant alcohol or drug problem and "[s]uch other factors as the court may in each individual case determine to be relevant." Section 767.24(5), STATS.

*something necessary . . . to . . . another* which is termed the principal . . . ." BLACK'S LAW DICTIONARY 762 (6th ed. 1990) (emphasis added).

We do not see how the power to order a change of custody that is to take place at some unknown time in the future, upon the occurrence of some stated contingency, may be necessarily implied or inferred from the authority granted to the court by either § 767.24(3) or § 767.325, STATS. Not only is the key statutory language cast in the present tense but the plain underlying purpose of these provisions is to permit the court to assess the effect of historical *and present* factors upon the child's well-being in order to determine the type of custodial arrangement that will best serve his or her interest. We do not see how the statutes can be read to "confer[]" an "incidental power" to the trial court to make a custody award that is both prospective and contingent, as this one is.[6]

---

[6] Although the case is distinguishable on its facts, we think the reasoning we employed in *Schwantes v. Schwantes*, 121 Wis. 2d 607, 360 N.W.2d 69 (Ct. App. 1984), supports our conclusion in this case.

In *Schwantes*, the trial court awarded custody to the wife but only on the condition that she break off her relationship with another man. When she did not do so, the court transferred custody without further proceedings. We reversed, concluding that "a conditional custody award which purports to make a transfer of custody automatic upon violation of the condition is . . . contrary to public policy" and to the terms of the change-of-custody statute then in existence, § 767.32(2), STATS., 1981-82, which permitted changes in a custody order only upon "a finding that such removal is necessary to the child's best interest as shown by substantial evidence supporting a change in custody . . . ." *Schwantes*, 121 Wis. 2d at 627-28, 360 N.W.2d at 78-79. Because we felt the statutory language contemplated examination of "the circumstances of the parties and the children at the

██ The trial court's concern for the children's welfare in the unfortunate event that their mother becomes incapacitated or dies during their minority is understandable, but we see no authorization in the law for a change of custody in the future based on circumstances that might not exist when the order is to take effect.

*By the Court.*—Judgment reversed.

time a transfer is sought," and because the trial court "neither had nor sought current information" with respect to the children's best interest or the need for the transfer, we concluded that the court abused its discretion in transferring custody in the absence of " 'substantial evidence supporting a change' " under the statute. *Id.* at 628-30, 360 N.W.2d at 79-80 (quoted source omitted). In so holding, we stated:

> A provision allowing automatic transfer for violation of a conditional custody award fixes the focus of inquiry on circumstances existing at the time of the initial award, rather than on present harm necessitating a transfer. *This does not comport with the statutory mandate* .... The dangers of such a provision, if automatically enforced, are readily apparent from the facts of this case. The transfer was made in a vacuum of current information respecting the welfare of the children. . . . Without a showing based on substantial evidence that "current custodial conditions are harmful in some way to the best interest of the child," it is not possible to find that removal is necessary to the child's best interest as required by [the statute].

*Id.* at 629-30, 360 N.W.2d at 79-80 (quoted sources omitted).

We believe here, as we did in *Schwantes*, that the relevant statutes, §§ 767.24(3) and 767.325, STATS., require the court to consider the parties' current custodial situation before transferring custody of the children to a third party. *Id.* at 629, 360 N.W.2d at 79.