In re the Marriage of:

## Daniel R. Zawistowski, Petitioner-Respondent,

v.

## Tammra S. Zawistowski n/k/a Tammra S. Crank, Respondent-Appellant.

Court of Appeals

*No. 01–0655. Submitted on briefs October 5, 2001.—Decided March 14, 2002.*

2002 WI App 86

(Also reported in 644 N.W.2d 252.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Bennett J. Brantmeier* of *Krek & Associates, S.C.*, Jefferson.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Terry P. Race*, Whitewater.

Before Vergeront, P.J., Roggensack and Lundsten, JJ.

¶ 1. VERGERONT, P.J.   Tammra Zawistowski appeals the child support provisions in the judgment of divorce from Daniel Zawistowski. The trial court did not order Daniel to pay Tammra child support for their two minor children, but instead ordered that the parties equally split the variable costs for the children. Tammra contends the trial court erred in finding that Daniel would have the children 120 overnights per year under the placement schedule. In the alternative, she contends the court erred in deciding not to apply the shared-time payer formula under WIS. ADMIN. CODE § DWD 40.04 and not to order any child support. We conclude:   (1) the court's finding that Daniel would

have 120 overnights a year is not clearly erroneous; (2) the court had an erroneous understanding of how variable costs are treated in the shared-time payer formula; and (3) the court exceeded its authority when it ordered the parties to split variable costs as an alternative to ordering child support. We therefore reverse and remand, while affirming the finding of 120 overnights.

## BACKGROUND

¶ 2.    The parties' two children were six and eleven years old at the time of the divorce. Daniel and Tammra each earned approximately $40,000 annually. The parties stipulated to joint legal custody and to a placement schedule that took into account each party's work schedule. During the school year, in week one, Daniel was to have the children after school until 5:00 p.m. on Monday and Tuesday, after school until 7:00 p.m. on Wednesday, and overnight on Thursday; if there were no school on Friday, he was to have the children until Tammra was off work or 5:00 p.m., whichever was sooner. In week two, Daniel was to have the children after school until 5:00 p.m. on Monday and Tuesday, and after school on Thursday until 6:00 p.m. Sunday. Tammra was to have the children at all times when Daniel did not. During the summer months when the children were not enrolled in regular school, during week one, Daniel was to have the children from 1:00 p.m. to 7:00 p.m. on Monday, Tuesday, and Wednesday, and Friday until Tammra was off work or until 5:00 p.m., whichever was sooner.[1] In week two, Tammra was to have the children after school Monday, Tuesday, and

---

[1] The stipulated schedule does not specify an overnight for Daniel in week one of the summer schedule, and, in fact, makes no mention of Thursday at all. However, both parties agree

Wednesday until after Daniel was finished work on Thursday, when he would have the children through Sunday at 6:00 p.m. Each parent was to be responsible for appropriate daycare during his or her scheduled placement. The parents were to alternate on a yearly basis having the children with them for certain specified holidays, and each party was to have eighteen days of vacation time with the children each year. The holidays and vacation time were to supercede the regular schedule.

¶ 3. The parties were not able to agree on child support and that issue was tried to the court.[2] Tammra asked that the court order Daniel to pay 25% of his gross income in child support or, in the alternative, to pay child support based on the shared-time payer formula under WIS. ADMIN. CODE § DWD 40.04(2). Daniel argued that the court should not apply the formula and instead order the parties to share the variable costs 50–50.

¶ 4. The court adopted the custody and placement schedule the parties agreed to, finding that it maximized the time each parent spent with the children and was in the best interests of the children. The court found that Daniel would have the children with him for an average number of 120 overnights, and determined on that basis that he was a shared-time payer as defined under WIS. ADMIN. CODE § DWD 40.02(25). The court found that 25% of his income was $930.50, and, under

---

Daniel has the children for four overnights every fourteen days in the summer, as he does in the school year. Since the stipulated schedule for the summer months provides that Daniel has the children for three overnights (Thursday, Friday, and Saturday) in week two, we assume that in week one he has them for one overnight—on Thursday.

[2] Maintenance was waived by the parties.

the formula in WIS. ADMIN. CODE § DWD 40.04(2), his child support payment would be reduced by 83.35% to $775.57.[3] The court described the issue whether to apply the shared-time payer formula in this way:

> The issue today ... is whether the Court should follow the guidelines of the Administrative Code, which assumes that the wife will pay for all the variables and that the husband will then pay the wife child support which would presumably account for the variable expenses paid for by the wife when the children are with her and the variables which are paid by the husband when the children are with him.

---

[3] WISCONSIN ADMIN. CODE § DWD 40.03 provides:

**Support orders.** (1) DETERMINING CHILD SUPPORT USING THE PERCENTAGE STANDARD. The payer's base shall be determined by adding together the payer's gross income available for child support under sub. (2), if appropriate, and the payer's imputed income for child support and dividing by 12 .... The percentage of the payer's base or adjusted base that constitutes the child support obligation shall be:

. . . .

(b) 25% for 2 children;

WIS. ADMIN. CODE § DWD 40.04(2) provides:

(2) DETERMINING THE CHILD SUPPORT OBLIGATION OF A SHARED-TIME PAYER. The child support obligation in cases where both parents provide overnight child care beyond the threshold may be determined as follows:

(a) Determine the number of overnights, or the equivalent as determined by the court in accordance with s. DWD 40.02(25), each parent has the child per year. If the parent with less time has the child at least 110 overnights but not more than 146 overnights, follow the procedure in par. (b). If each parent has the child for at least 147 overnights but for not more than 218 overnights, follow the procedure in par. (c).

(b) In cases where the parent with less time has the child for at least 110 overnights, or the equivalent as determined by the court in accordance with s. DWD 40.02(25), per year but not more than 146 per year, determine the child support as follows:

1. Determine the child support obligation under s. DWD 40.03(1) of the parent with less time;

2. Divide by 365 the number of overnights the parent with less time has physical placement of the child to determine the percentage of the year that the parent with less time provides overnight care;

3. If the percentage under subd. 2. is over 30% but not more than 40%, reduce the child support obligation under subd. 1. in accordance with Table 40.04(2)(b);

TABLE 40.04(2)(b)
REDUCTION OF SUPPORT OBLIGATION FOR
31% TO 40% TIME WITH CHILD

| COLUMN A<br>% of time with child | COLUMN B<br>% of original child support<br>obligation |
|:---:|:---:|
| 30 | 100% |
| 31 | 96.67% |
| 32 | 93.34% |
| 33 | 90.01% |
| 34 | 86.68% |
| 35 | 83.35% |
| 36 | 80.02% |
| 37 | 76.69% |
| 38 | 73.36% |
| 39 | 70.03% |
| 40 | 66.70% |

4. Multiply the child support obligation under subd. 1. by the appropriate percentage from Column B of Table 40.04(2)(b) to determine the amount of child support due; and

5. Express the amount of child support due identified in subd. 4. either as a percentage or as a fixed sum.

[4] WISCONSIN STAT. § 767.25(1m) provides:

**(1m)** Upon request by a party, the court may modify the amount of child support payments determined under sub. (1j) if, after considering the following factors, the court finds by the greater weight of the credible evidence that use of the percentage standard is unfair to the child or to any of the parties:

(a) The financial resources of the child.

(b) The financial resources of both parents.

(bj) Maintenance received by either party.

(bp) The needs of each party in order to support himself or herself at a level equal to or greater than that established under 42 U.S.C. 9902 (2).

(bz) The needs of any person, other than the child, whom either party is legally obligated to support.

(c) If the parties were married, the standard of living the child would have enjoyed had the marriage not ended in annulment, divorce or legal separation.

(d) The desirability that the custodian remain in the home as a full-time parent.

(e) The cost of day care if the custodian works outside the home, or the value of custodial services performed by the custodian if the custodian remains in the home.

(ej) The award of substantial periods of physical placement to both parents.

(em) Extraordinary travel expenses incurred in exercising the right to periods of physical placement under s. 767.24.

(f) The physical, mental and emotional health needs of the child, including any costs for health insurance as provided for under sub. (4m).

(g) The child's educational needs.

637

cussed the ones it considered relevant as follows. (1) The financial resources of the parents were approximately equal. (2) The standard of living would be "approximately the same whether the Court orders child support according to the Administrative Code with full variables covered by the mother or does not order it with 50–50 compromise or division of the variables"; but the court then added that "if [Daniel] is paying support to [Tammra] and [she] has responsibility for the variables, that is a disincentive for [Daniel] to buy clothing or food or other types of things [for] the children," so splitting the variables 50–50 would likely make the children's standard of living "higher but not significantly higher." (3) Tammra has additional day-care expenses beyond those of Daniel, but the evidence shows that difference to be nominal. (4) The children will spend many more nights with Tammra, but they will spend a significant amount of their waking time with Daniel; variable expenses are more likely to be incurred in waking hours than sleeping hours; both parents will be providing a home where each child has his or her own bedroom; the amount of time each child spends with each parent "has been established to be approximately equal." (5) The best interests of the children are significant in this case. It is positive that

(h) The tax consequences to each party.

(hm) The best interests of the child.

(hs) The earning capacity of each parent, based on each parent's education, training and work experience and the availability of work in or near the parent's community.

(i) Any other factors which the court in each case determines are relevant.

All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

both parents enjoy shopping for clothes with their children, preparing meals for them, and those activities should be encouraged; it would not be in the children's best interests to discourage Daniel from doing those things by "shift[ing] the financial balance."

¶ 6. The court ordered that Daniel prepare the dinner meal when the children are with him until 5:00 p.m.; that he and Tammra split the costs of clothing, informing each other of their purchases and balancing them out; and that they continue to split the cost for breakfasts and lunches. The court added that, based on the history of the parties' interactions, they would be able to do these things in a manner that was in their children's best interests. The court concluded that for all these reasons it was appropriate not to use the formula in Wis. Admin. Code ch. DWD 40 and instead to order that Daniel pay no child support.

DISCUSSION

¶ 7. The setting of child support is committed to the sound discretion of the trial court, and we affirm the circuit court's decision if it examined the relevant facts, applied the correct law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Randall v. Randall*, 2000 WI App 98, ¶ 7, 235 Wis. 2d 1, 612 N.W.2d 737. We accept the trial court's findings of fact unless they are clearly erroneous. Wis. Stat. § 805.17(2).

¶ 8. Tammra first contends the trial court erred in finding that Daniel would have 120 overnights under the placement schedule because, she asserts, the evi-

dence showed that he would have only 104 overnights. We do not agree with this characterization of the evidence.

¶ 9. The evidence on how many overnights Daniel would have under the schedule was conflicting because of how each party treated the eighteen days vacation each could take. Both parties agreed that, applying the schedule without regard to holidays and vacations, Daniel had 104 overnights per year (four every two weeks). Daniel testified that he would have the children for 130 or 132 overnights a year, including his eighteen days for vacation. Tammra testified that Daniel would have the children for 110 overnights, including six holidays. She did not include vacation time: since each has eighteen days for vacation with the children, she viewed this as a "wash." However, at closing argument both attorneys acknowledged that the number of overnights Daniel would have would depend on whether the parents took their vacation days on days when they already had the children overnight under the regular schedule or on days when the other parent had them overnight under the regular schedule. Since no one could know that, the dispute was not over an existing fact, but over what set of assumptions to make about the future. Daniel's attorney argued that counting vacation days, Daniel would have the children for between 121 and 127 overnights a year, depending on when the parties took their vacations. Tammra's attorney argued that the range was between 104, which he acknowledged did not count holidays or vacations, and a high of 120.

¶ 10. The court determined that 120 overnights was the appropriate figure—the high end of Tammra's attorney's range and just below the low end of Daniel's attorney's range. It was reasonable for the court to

assume—although no one could now know for sure—that the parties would most likely not end up taking their vacations in a manner that maximized either all the overnights Daniel could possibly have or all the overnights Tammra could possibly have, but somewhere in between. We conclude the court's determination of 120 overnights for Daniel is reasonable and is supported by the record.

¶ 11.    Tammra next contends that the trial court's decision not to order child support was based on a misunderstanding of the shared-time payer formula. She contends the trial court did not understand that this formula assumes that both parents are paying variable costs proportionate to the amount of overnights each has with the child, and sets the formula accordingly. Her position is that the court should have applied the shared-time payer formula, making adjustments if necessary, but that it was not reasonable to order no child support and instead order the parties to split the variable costs. Daniel responds that a trial court may deviate from the shared-time payer formula under Wis. Stat. § 767.25(1m), and that the court did so here in a manner that reflects a proper exercise of discretion.

¶ 12.    A "shared-time payer" is "a payer who provides overnight child care or equivalent care beyond the threshold and assumes all variable child care costs in proportion to the number of days he or she cares for the child under the shared-time arrangement." Wis. Admin. Code § DWD 40.02(25). The threshold is 30% of the year or 109.5 out of every 365 days. Section DWD 40.02(28). "Variable costs" are "costs that include but

are not limited to payment for food, clothing, school, extracurricular activities, recreation and day care." Section DWD 40.02(30).

¶ 13. Since the court determined that Daniel had 120 overnights a week, and since Tammra did not contend that Daniel would not be assuming variable costs in proportion to the number of days he cares for the children, the court correctly concluded that Daniel is a shared-time payer under the above definitions. The court must therefore determine Daniel's child support obligation by using the formula in WIS. ADMIN. CODE § DWD 40.04(2), unless it would be unfair to either party or the children. *Randall*, 2000 WI App 98 at ¶ 15; WIS. STAT. § 767.25(1j) and (1m). The court here did undertake to apply the factors in subsec. (1m) and to make the findings required by § 767.25(1n).[5] However, we agree with Tammra that the court had a misunderstanding of how variable costs are considered under the shared-time payer formula.

■

¶ 14. The trial court's statements show that it believed that the formula assumed that the payee pays all the variable costs and the payer pays child support in order to pay his or her share of those costs. We cannot read the court's comments in any way other than expressing this view. This view is directly contradictory

---

[5] WISCONSIN STAT. § 767.25(1n) provides:

(1n) If the court finds under sub. (1m) that use of the percentage standard is unfair to the child or the requesting party, the court shall state in writing or on the record the amount of support that would be required by using the percentage standard, the amount by which the court's order deviates from that amount, its reasons for finding that use of the percentage standard is unfair to the child or the party, its reasons for the amount of the modification and the basis for the modification.

to the definition of a shared-time payer—someone who "assumes all variable child care costs in proportion to the number of days he or she cares for the child under the shared-time arrangement." Wis. Admin. Code § DWD 40.02(25). The formula that applies to a shared-time payer assumes that this is the case, and, for this reason, reduces what would otherwise be the percentage of child support. owed under Wis. Admin. Code § DWD 40.03. Thus, the court's reason for not applying the shared-time payer formula—that the formula would require Tammra to pay for all variable costs, and Daniel to pay her child support to help cover those—is based on an error of law.

¶ 15.   We recognize that the court's comments also indicate it did not use the shared-time payer formula because it found that the number of overnights the children spent with each parent did not fairly represent the amount of waking time they spent with each parent, and that waking time was more significant from the standpoint of variable costs. However, the note to the definition of "shared-time payer" in Wis. Admin. Code § DWD 40.02(25) specifically addresses this situation:

> **Note**:   There are physical placement arrangements in which the payer provides child care beyond the threshold and incurs additional cost in proportion to the time he or she provides care, but because of the physical placement arrangement he or she does not provide overnight care (e.g., payer provides day care while the payee is working). Upon request of one of the parties the court may determine that the physical placement arrangement other than overnight care is the equivalent of overnight care.

Thus, the court should have determined how much "equivalent care" Daniel provided beyond the 120 over-

nights and used that total in the shared-time payer formula, bearing in mind that the formula assumes that Daniel is incurring variable costs proportionate to that total number. Of course, the court would still not be obligated to order support according to that formula, if the court determined that it would be unfair to Daniel, Tammra, or the children. We are unable to tell from this record what decision the court would have made had it applied the formula correctly.

¶ 16. We also conclude the court erred in its implicit assumption that it has the authority to order the parties to share equally in variable costs for the children as an alternative to ordering child support. In a divorce proceeding, a trial court has only that authority given it by statute. *See Koeller v. Koeller*, 195 Wis. 2d 660, 664, 536 N.W.2d 216 (Ct. App. 1995). WISCONSIN STAT. § 767.25(1)(a) provides that in a divorce action the court shall "[o]rder either or both parents to pay an amount reasonable or necessary to fulfill a duty to support a child. The support amount may be expressed as a percentage of parental income or as a fixed sum, or as a combination of both in the alternative . . . ." As noted above, the court must either "determine child support payments" by using the standards established in WIS. ADMIN. CODE ch. DWD 40, or "modify the amount of child support payments determined [under those standards]" after considering the factors in subsec. (1m) and making the findings required by subsec. (1n). Section 767.25(1j), (1m) and (1n). Thus, the authority given the court is to determine and order some amount for child support. While that authority implicitly includes the authority to determine the amount to be zero, it does not implicitly include the authority to order the parents to divide expenses for the children

among themselves in particular ways as an alternative to ordering one parent to pay child support to the other.

¶ 17. We recognize that parties may agree on their own to share evenly in expenses relating to their children—or to divide them in some other way—and, if they do, the court may take that into account in determining the proper amount of child support. However, here the parties did not agree to divide the variable costs evenly. Indeed, the testimony was conflicting whether they had evenly divided expenses during the divorce proceedings, and whether that would work in the future. While both agreed they had been splitting school expenses equally, Tammra did not agree with Daniel that they had been splitting clothing expenses equally. She testified that she bought more clothing for the children because they needed more clothes at her house, since they went to school from her house more often than from Daniel's house, and she believed she would have difficulty getting Daniel to pay half of what the children needed. While the trial court is no doubt correct that it is in the children's best interests if their divorced parents can agree among themselves how to handle the children's expenses, when they do not reach such an agreement, the court's authority to make orders to provide for the children's needs is limited to that found in WIS. STAT. § 767.25. Similarly, while the trial court's goal here of encouraging both parents to take their children shopping for clothes and to prepare meals for their children is desirable, the court may not, in an effort to achieve these goals, exceed the authority granted in § 767.25. *See Koeller*, 195 Wis. 2d at 664.

¶ 18. Because the trial court had an erroneous understanding of the assumptions about variable costs underlying the shared-payer formula, and because it

did not have the authority to order the parties to share equally in the variable costs associated with the children as an alternative to ordering child support, we must reverse and remand. On remand, as we have indicated above, the court will have the opportunity to determine what number of overnights should be added to 120 to fairly represent the "equivalent care" Daniel provides, in light of the note to WIS. ADMIN. CODE § DWD 40.02(25). After applying the shared-time payer formula to that number, if either Daniel or Tammra requests the result be modified, the court should determine whether application of the shared-time payer formula is unfair to either party or the children, applying WIS. STAT. § 767.25(1m) and (1n). How the parties currently handle variable costs is relevant in determining the appropriate "equivalent care" Daniel provides and whether the result of the shared-time payer formula is unfair to either party or the children.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.