**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 9, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2025**

Cir. Ct. No. **2014FA1440**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE MARRIAGE OF:

GARRETT G. RIPLEY,

   PETITIONER-RESPONDENT,

V.

LAURA S. RIPLEY,

   RESPONDENT-APPELLANT.

APPEAL from a judgment of the circuit court for Brown County: JOHN ZAKOWSKI, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Laura Ripley appeals a judgment of divorce containing no award of child support, which was entered following a denial of Laura's motion for reconsideration on the child support issue.[1] Laura argues the circuit court lacked authority to deviate from the percentage standard for child support established by statute and the administrative code because Garrett Ripley did not request a deviation. She also argues the court did not sufficiently explain why it was deviating from the percentage standard. Finally, she argues the court erred in some fashion when addressing her request for variable expenses during the reconsideration proceedings. We reject Laura's arguments and affirm.

## BACKGROUND

¶2 Laura and Garrett were married in 2010. One child, John, was born in 2011, and the parties separated in 2013.[2] John suffers from a chronic esophageal disease for which he has received a combination of dietary restrictions and medical treatment. He has other medical conditions as well, and although Laura and Garrett agreed that he has made substantial progress with treatment, the circuit court recognized that John continues to require significant observation and supervision. Temporary orders, including an order issued following mediation, established that Laura had primary physical placement of John, with Garrett having placement on alternating weekends and certain weekdays.

¶3 Following a contested divorce hearing that spanned multiple days in 2016 and 2017, the circuit court issued a written decision in which it ordered joint

---

[1] Because the parties share a surname, we will refer to them by their given names.

[2] We use a pseudonym for the child out of an abundance of caution.

legal custody of John. The court noted John's physical placement was a disputed issue between the parties. After considering the factors identified in WIS. STAT. § 767.41(5) (2017-18),[3] the court rejected Garrett's "fifty-fifty" proposal and decided to continue the placement as outlined in the temporary orders, with one minor modification. This decision resulted in John being placed with Laura sixty-two percent of the time and his placement with Garrett thirty-eight percent of the time.

¶4 The circuit court adopted the terms of a partial marital settlement agreement on other issues, which included the parties' agreed-upon property division and agreement to waive maintenance. By stipulation, the court set Garrett's gross annual income at approximately $68,500 from all of his employment and Laura's gross annual income at approximately $58,600 from her work at the Red Cross.

¶5 Notably, beyond a few passing references during the settlement and placement discussions, neither party advanced any argument concerning child support during the hearing. In the circuit court's written decision, it declined to order any child support. Its reasoning was tied to the temporary orders:

> **Child Support:** At the time of the final hearing, there was no child support order in place. The final placement order closely mirrors the temporary placement order. The court has considered the totality of the circumstances and does not believe a child support order is necessary at this time. No child support is ordered.

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

The court also observed that John was covered under both parties' health insurance policies.

¶6     Laura filed a motion for reconsideration in which she raised two issues. First, she requested a review of the child support order, asserting that she was paying the "vast majority" of John's expenses, including daycare. Laura noted Garrett was earning more income than her and John had expensive medical needs. Second, Laura noted the circuit court's decision was silent regarding how the parties were to divide variable expenses and uninsured medical expenses. She requested an order requiring the parties to share John's variable expenses in proportion to the placement schedule and to split John's uninsured medical expenses evenly.

¶7     At the outset of the hearing on the reconsideration motion, the parties stipulated as to how John's variable expenses and uninsured medical expenses were to be divided. Laura later presented exhibits showing her calculations of child support based on the guidelines. Laura asserted that given the placement schedule, the guideline amount of child support was $420 per month using her income as of the date of the final hearing, or $365 per month using her income at the time of the reconsideration hearing. She also stated she had significant daycare expenses that varied between approximately $200 and $400 per month. Garrett opposed any modification regarding child support.

¶8     The circuit court stated that during the final hearing, the parties were focused on placement and John's medical needs and "the monetary aspect of the

child support … was kind of pushed to the background."[4] According to the court, it had considered the child support guidelines under WIS. ADMIN. CODE ch. DCF 150 at the time of its decision, and the "numbers [it] crunched" did not generate a recommended amount of child support as high as $365 per month. The court also noted that its placement decision was, in part, predicated upon the notion that daycare was not an issue because John's grandmother could care for John for free while Laura worked. Laura responded that John's schedule had changed somewhat with school starting, and that his grandmother had always been paid to watch John. This information prompted the court to observe that it had never been made aware of daycare expenses at the time of trial.

¶9    The circuit court also expressed some frustration about being presented with new information concerning the parties' health insurance policies. The court stated that at the time of its original decision, it was comfortable with having double insurance because of John's particular medical needs. However, the Red Cross had recently proposed a new health insurance plan to Laura, and it was undisputed that Garrett's insurance plan was a zero-deductible plan that cost approximately $400 per month for John's portion and "covers almost everything."

¶10   Ultimately, the circuit court observed that given the parties' stipulation, the only issues that remained for decision were whether it should

---

[4] Laura represents on appeal that she requested child support throughout the circuit court proceedings. In fact, her motion for a temporary order and accompanying affidavit requested family support in the form of maintenance. Additionally, her pretrial brief referenced child support only once as a heading with the notation, "Per Guidelines. Both parties continue to carry health insurance insuring John." Laura cites to no other document in the appellate record supporting the notion that the issue of child support was argued. Indeed, our review of her post-trial brief in the circuit court shows she focused almost exclusively on the placement issue, with no mention of child support.

reconsider child support and what to do about the daycare expenses. After a brief off-the-record discussion, the court noted that if the parties used only Garrett's health insurance for John, Laura was effectively benefiting by about $200 per month.[5] Additionally, the court stated that if it used the mean value of the amounts Laura had paid in daycare expenses and discounted it for Garrett's share of placement, Garrett's obligation would be approximately $100 per month. Assuming the validity of Laura's proposed $365 calculation under the guidelines, the court recognized that there was a deviation and that Garrett was still receiving a small financial benefit under this proposal. However, the court stated it was working with the information it had before it and trying to come up with a fair solution that maintained the finality of its prior decision, recognized the new information the parties had presented, and dealt with Laura's reasonable requests for additional financial assistance.

¶11    Following the hearing, the circuit court entered a written order memorializing its decision on Laura's motion for reconsideration. Specifically, the court adopted the parties' stipulation regarding variable expenses and uninsured medical expenses, and it ordered Garrett to contribute $100 per month during the school year (i.e., excluding June, July and August) toward Laura's cost of daycare. The court reaffirmed both the placement schedule from its earlier

---

[5] It is unclear precisely what amount Laura would save by not having to provide health insurance for John under this arrangement. The circuit court remarked that there was "new information" in the form of the recent Red Cross health insurance offering, and it stated the parties "should be able to as responsible parents … communicate and just show the plans and crunch the numbers and figure out what's best for them financially and for John." The court stated it believed that "both parties … have John's best interests at heart." Toward the end of the hearing, after the off-the-record discussion with the parties, the court stated the parties' attorneys were "going to exchange information on the insurance and if their insurance numbers are way out of whack then they can provide information to the Court and if the Court feels it needs to adjust variable expenses so that it's more fair to the parties I'll do that."

decision and its decision not to award child support. The court also directed the parties to exchange health insurance information to determine the best coverage for John, and it stated it would revisit the contribution for daycare expenses if the financial impact of the parties' insurance decision was substantially different from what the parties presented at the hearing. The court also entered a written judgment of divorce memorializing that no child support was ordered. Laura now appeals.

**DISCUSSION**

*I. Child Support*

¶12 Laura's primary argument on appeal is that the circuit court erred by failing to order child support consistent with the guidelines. We review a determination of child support for an erroneous exercise of discretion. ***LeMere v. LeMere***, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789. We will uphold a discretionary decision as long as the court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion a reasonable judge could reach. ***Id.*** Additionally, Laura's argument implicates the proper interpretation of Wisconsin's child support statute, WIS. STAT. § 767.511, which presents a question of law. *See **Teschendorf v. State Farm Ins. Cos.***, 2006 WI 89, ¶9, 293 Wis. 2d 123, 717 N.W.2d 258.

¶13 Laura first argues the child support statute "clearly dictates that a party must request a deviation before the circuit court can deviate from the applicable child support guidelines." It is true the statute creates a presumption that the court will determine child support by using the percentage standard established by the administrative code. *See* WIS. STAT. § 767.511(1j). It is also true that the statute speaks in terms of a "request by a party" in discussing when

the court may deviate from the percentage standard and the factors that it may consider. *See* § 767.511(1m).

¶14    In this case, Laura's bare reference to the statutory language does not establish that the circuit court lacked authority to consider sua sponte whether to deviate from the percentage standard.  As a general matter, when fashioning child support, the statutes provide a form of equitable authority.  *See **Cook v. Cook***, 208 Wis. 2d 166, 183, 560 N.W.2d 246 (1997).  The court "must be free to [exercise such equitable authority] in the manner most consistent with the needs of the children and the resources of the parents in each case."  ***Id.***  These principles are all the more important here, where the issue of child support was not pressed by either party and the circuit court was not presented with any guideline calculations by the parties until after the contested divorce hearing, despite the parties having well-developed opinions on what John's placement should be.

¶15    As a result, we cannot conclude, in this case, that the circuit court's decision to consider sua sponte whether a deviation from the percentage standard was appropriate constituted an erroneous exercise of discretion.  The parties essentially left the court without guidance on the issue.  Moreover, once the issue of child support was pushed to the forefront by Laura's motion for reconsideration, Garrett's position that no child support was appropriate was clearly a "request by a party" for a deviation.  *See* WIS. STAT. § 767.511(1m).

¶16    Next, Laura argues the circuit court "further erred in its determination to deviate from the child support guidelines as there was an inadequate explanation for the deviation."  If we were presented only with the court's explanation in its written decision—which it seems was based solely upon the lack of a request for temporary child support—we might well agree.  At the

reconsideration hearing, however, the court explicitly stated that it had considered whether the percentage standard was appropriate when crafting its earlier decision. At that hearing, the court further developed the reasons for its deviating from the percentage standard, which, again, was the first time the parties fully presented their positions on the child support issue.

¶17 Laura contends this subsequent explanation was still inadequate. In particular, she criticizes the circuit court for not clearly articulating the amount it determined was required by the percentage guidelines. Although we agree the court could have more clearly stated what its calculation showed, we cannot find reversible error on this basis. Neither party presented the court with any guideline calculations until after its initial decision. Additionally, although the court remarked that the "numbers" it used generated a result that was lower than the $365 proposed by Laura at the reconsideration motion hearing, it appears the court assumed the validity of Laura's $365 proposal when determining whether further modification of child support was warranted.

¶18 Ultimately, at the reconsideration motion hearing, the circuit court referred to many of the factors to be considered for deviating from the percentage standard set forth in WIS. STAT. § 767.511(1m). For example, it referred to the parties' incomes when discussing what it had earlier calculated for the guideline amount, to John's periods of placement with each parent, to John's health, and to the parties' health insurance situation. These are proper considerations when determining whether a deviation is warranted. *See* § 767.511(1m)(b), (e), (ej), (f). Although Laura does not believe the court gave adequate or proper consideration to any of these factors, it is clear they underlie the court's determination that a deviation was appropriate. We therefore perceive a reasonable basis for the court's exercise of discretion.

¶19     Moreover, the circuit court attempted to achieve a result very similar to what Laura was proposing for child support by addressing the parties' expenses for health insurance and daycare.  The court's determinations in this regard were informed by new information the parties presented at the reconsideration motion hearing, such as the fact that John's grandmother was not providing child care free of charge, as had been implied during the trial.  While we have some concerns with the court fashioning relief in terms of variable expenses rather than as part of an award of child support, *see Zawistowski v. Zawistowski*, 2002 WI App 86, ¶¶16-17, 253 Wis. 2d 630, 644 N.W.2d 252, Laura neither raised this argument below nor develops any such argument here, *see United Airlines, Inc. v. DOR*, 226 Wis. 2d 409, 411 n.1, 595 N.W.2d 49 (Ct. App. 1999) (noting that arguments not raised on appeal will not be addressed).  Additionally, Laura does not present any argument that the $100 per month Garrett was ordered to contribute to her daycare expenses should have instead been included in a child support order.

¶20     Given the foregoing, our determination that the circuit court did not erroneously exercise its discretion in this case is informed by a few factors.  The relatively unique procedural posture is first and foremost, insofar as the parties did not litigate the issue of child support until the reconsideration motion proceedings.  Second, at that reconsideration hearing, the court's explanation, while not as thorough as we might prefer, contained a sufficient basis for us to conclude the court considered the proper facts and reached a reasonable conclusion.  Third and finally, the legal basis for the court's order is clear, and our determination that the court applied the proper standard of law is informed by the arguments the parties made below and on appeal.

## II. Variable and Daycare Expenses

¶21 Laura's argument on this point is unclear. Her brief-in-chief argues the circuit court erred by failing to "order variable costs in the same proportion with the shared placement order." But at the reconsideration motion hearing, the parties stipulated to do just that, and the stipulation is reflected in the decision and order dated January 11, 2018, which was entered following the reconsideration motion hearing. Only John's uninsured medical expenses, if any, were to be evenly divided, and Laura makes no specific argument regarding that provision. Additionally, the court recognized that Garrett's "Cadillac" insurance plan could save Laura insurance expenses.

¶22 In any event, Laura's argument on this point is undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). Laura may be arguing the circuit court erred by failing to include the terms of the parties' stipulation in the "hereby ordered" section of the January 11, 2018 decision and order, or she may be arguing the court erred by failing to incorporate its January 11 decision into the judgment of divorce. Either way, the January 11 decision itself clearly adopts the parties' stipulation regarding variable expenses and requires Garrett to pay thirty-eight percent of John's variable costs. Because it appears to us that there is an existing order that adopted the parties' stipulation regarding variable expenses, Laura has no basis to appeal this issue. *See Fosshage v. Freymiller*, 2007 WI App 6, ¶15, 298 Wis. 2d 333, 727 N.W.2d 334 (2006).

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11