COURT OF APPEALS
DECISION
DATED AND FILED

April 11, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2021AP775**

**STATE OF WISCONSIN**

Cir. Ct. No.  2020FA80

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE MARRIAGE OF:

TERRY ALLEN OLSON, BY MICHELLE THORSON, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF TERRY ALLEN OLSON,

   PETITIONER-RESPONDENT,

 V.

LAURIE JEAN OLSON,

   RESPONDENT-APPELLANT.

APPEAL from a judgment of the circuit court for Chippewa County: STEVEN H. GIBBS, Judge. *Affirmed in part; reversed in part and cause remanded*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1　PER CURIAM.　Laurie Olson appeals from a judgment of divorce. Specifically, Laurie[1] argues that the circuit court erroneously exercised its discretion in dividing the parties' property by failing to address her request for an unequal property division and including in the property division a portion of the value of a cabin gifted to her by her mother. Laurie also argues that she did not waive a possible judicial conflict; that the court erred in not adequately ruling on a motion in which she challenged her ex-husband's competency; and that the court erroneously ruled on various motions addressing the granting of divorce and her ex-husband's death.[2]

¶2　We agree with Laurie that the circuit court erroneously exercised its discretion by failing to address her request for an unequal property division and including in the property division her nonmarital property. We therefore, reverse the court's division of the parties' property and remand for the court to modify the property division to award the entire value of the cabin to Laurie as nonmarital property, and to address Laurie's unequal property division. We affirm on the remaining issues.

## BACKGROUND

¶3　Terry and Laurie Olson were married in 2005. In April 2020, Terry filed for divorce, which Laurie contested. Shortly after the divorce commenced, Terry was diagnosed with terminal cancer.

---

[1] Because Laurie and Terry share the same last name, we will refer to them by their first names throughout the remainder of this opinion.

[2] On appeal, Laurie also argues that the circuit court erred by denying her motions for reconsideration. However, Laurie never filed any motions for reconsideration in the circuit court. We will therefore not address this issue.

¶4 The case was assigned to the Honorable James M. Isaacson.[3] A final evidentiary divorce hearing was held on December 3, 2020. Terry testified first, followed by a tractor appraiser, a trailer appraiser, and Terry's daughter, Julie Arneson. Thereafter, Laurie testified. During Laurie's testimony, Judge Isaacson realized that he had a potential conflict of interest because in 2006, while he was in private practice, he drafted deeds for two properties relevant to Laurie and Terry's divorce, including the deed for a cabin—a matter on which Judge Isaacson was deposed during a previous lawsuit.

¶5 Judge Isaacson subsequently obtained permission from the parties to privately call an attorney of record in the earlier property dispute lawsuit. After speaking to that attorney, he explained to the parties that he was not involved in any way in that lawsuit other than being deposed. Judge Isaacson stated that he had no recollection of the case, and he discovered that it was eventually moved to a different county due to conflicts involving Judge Isaacson and other local judges.

¶6 Laurie's attorney expressed concern about the potential conflict of interest because "the cabin is a really big issue in this case," and she asserted that "it might be better if [Judge Isaacson] did recuse himself, and we have a judge that had no contact." Judge Isaacson responded that "but for [Terry's] illness, [he] wouldn't have any hesitation about withdrawing." Terry's attorney expressed concern about her client's competency to testify if the divorce were pushed back even to January or February and she questioned whether it would be possible to

---

[3] Because the divorce proceeding was bifurcated and adjudicated by two judges, we will refer to each judge by his respective name and to the judges collectively as the circuit court.

3

grant the divorce that day and deal with the property division later. Judge Isaacson responded:

> I would have to have some more testimony from [Terry] about any possible way that he would reconcile. And if not, I think I would be inclined to grant the divorce. Just so you know that that's my plan right now.
>
>  ….
>
> I think that with some minimal questioning by the [c]ourt of [Terry], we could get the divorce granted. With regard to the property division, I think that I don't want you to start over again, but you've got your testimony from your—you got their transcript, the issue would be really the cabin is a $160,000 asset, and I see, according to you, folks, more valuable than the home. So that is a major factor in this divorce.

¶7    Judge Isaacson then checked the calendars of the other judges in the county and he determined that the Honorable Steven H. Gibbs would be the best judge to take over the case, given that the only other judge, the Honorable Benjamin J. Lane, formerly worked in the same law firm as the attorney of record in the property dispute lawsuit. After a short recess, Judge Isaacson went back on the record and stated:

> So I went down and talked to Judge Gibbs. And if counsel and both sides would stipulate that he can take over the case to hear the testimony of the respondent and her witnesses and review the transcript from the petitioner's testimony and his witnesses, that he would be willing to take over the case, and it could be heard starting at 8:30 next Thursday morning.

¶8    At first, both parties agreed that Judge Gibbs could take over the case. Terry's attorney, however, followed up with a question again regarding whether the judgment of divorce could be finalized that day. The following exchange took place:

[JUDGE ISAACSON]: Well, those are the options, folks. If I—I'm—I'm not trying to pull punches here. I think if I would question [Terry] about the likelihood of him staying married after being separated for the last seven or eight months, his age, his health, any chance he's going to reconcile, he says no, I'm going to grant the divorce, whether it's today or next Thursday. And if you think there's something to be gained by waiting until Thursday, I think that's a mistake, but you're going to, then, run the risk of my making a decision today. And if you think I'm going to go overboard, I hope I don't, but I don't want to be accused later of going overboard, trying to overcorrect the problem, by bending over in favor of [Terry] at the expense of [Laurie] because of what might be a perceived conflict.

….

But my point is here are the two options. If I keep the case today and we got 2 1/2 hours to finish up, if we had to, and I make a decision that [Laurie] thinks is overcompensating because of these appearances that may be prejudicial to her, she's out of luck, as opposed to waiting seven days for a completely independent decision being made. That's the issue I think.

I—I don't particularly care to proceed, to be honest with you. I think I'm old school yet. The old supreme court rules … always said to the lawyers to avoid even those cases where there was an appearance of impropriety. Here, I don't think there is any actual but there certainly is an appearance because of the things that were done and the deeds that were done.

….

[LAURIE'S ATTORNEY]: There's a lot of "didn't know," and I don't think this court should finish it because if someone's unhappy with the decision, they're going to use that for an appeal or for problems, so I'd rather just do it cleanly. And then when it's over, it's over.

….

Now, if you divorce them, I don't think that there's a conflict there.

[JUDGE ISAACSON]: No. So that's what I'm saying that I—my intention today, if [Terry's attorney] says that's the only condition under which she'll continue this case until next Thursday and take away that one issue of appeal for

5

> you, in case down the road it comes back to haunt you, that's what I'm going to do.

Judge Isaacson then recalled Terry as a witness, questioned him about the irretrievable breakdown of the marriage and the possibility of reconciliation, and granted the divorce effective immediately.

¶9      As planned, Judge Gibbs presided over the property division hearings held on December 10, 2020, and January 7, 2021. At the start of the December 10 hearing, Laurie asked Judge Gibbs to vacate "the previous first part of this divorce," appoint a guardian ad litem (GAL) for Terry, and retry the matter because Terry was incompetent during his testimony at the December 3 hearing. Laurie subsequently filed a motion in support of her request, citing a December 4, 2020 letter from Terry's doctor. In that letter, Dr. Tim Burns stated that

> Terry has multiple co-morbidities that include mental status changes that are brought on by metabolic changes. His medication and treatment regime may cause him to seem unable to answer questions in a timely manner. At the start of treatment[, Terry] was able to make his own decisions and was able to ask/answer questions. Now as treatment and diagnosis [have] progressed, Terry has increased confusion and is unable to ask/answer questions.

Laurie argued that under WIS. STAT. § 803.01(3)(a) (2021-22),[4] a GAL was required to be appointed for Terry because Laurie was claiming he was incompetent. Terry's attorney responded that any competency concerns should have been brought up at the December 3 hearing and that the motion was a delay tactic being used because of Terry's terminal cancer. Judge Gibbs took the

---

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

competency issue under advisement because he had not yet read the transcript from the December 3 hearing.

¶10    At the January 7 hearing, the parties again addressed the issue of Terry's competency.  A second letter from Dr. Burns, dated January 5, 2021, was entered into evidence.  In that letter, Dr. Burns wrote, in part: "[Terry] was seen recently in my oncology office [on] 12/4/2020 and was competent to make his own decision to stop treatment.  Terry has never been deemed incompetent at any time during his treatments."

¶11    After reviewing the December 3 hearing transcript a second time, Judge Gibbs determined that Terry was competent when he testified at the December 3 hearing, and he therefore denied Laurie's motion to vacate Judge Isaacson's decision to grant the parties a divorce.  Specifically, Judge Gibbs found that, "[w]hile [Terry's] answers to the questions both on direct and cross weren't absolutely perfect, they weren't of the essence that would lead me to believe that he could not" answer the questions.  Judge Gibbs also relied on the fact that Judge Isaacson had asked Terry specific questions before granting the divorce, and that Judge Isaacson had significant experience with competency determinations as a judge.  Lastly, Judge Gibbs referenced Dr. Burns' January 5 letter, saying that Terry's decision to end future cancer treatment is a much bigger decision to make "than whether he wants to get divorced or not."  Judge Gibbs did not appoint a GAL for Terry.

¶12    Regarding the property division, Laurie originally requested a 50/50 division of the marital assets, but she later sought an unequal property division based on her disability, which limits her income to about $1,200 per month.  In support of her request, Laurie testified that she was disabled prior to the marriage,

that she had no ability to make more than her disability income, and that she had no cash assets. Laurie further testified that she had limited insurance options.

¶13 There was also considerable testimony surrounding the cabin that Laurie's mother, Marcella Johnson, gifted to Laurie. Laurie asked that the cabin be excluded from the property division because she believed it was nonmarital property.[5] Of relevance, Johnson transferred the cabin to Laurie by a quit claim deed in 2006. Johnson passed away in 2014, and a lawsuit ensued between Laurie and a number of her siblings. As a result of the lawsuit, Laurie paid her siblings a cash amount. While Terry testified that he took out a loan to pay the siblings, it was later determined at trial that both Terry and Laurie, together, took out a $45,000 loan using the cabin as collateral. Terry testified that the remaining money owed to the siblings was paid using his own money and a "small portion" of Laurie's money. Laurie, however, testified that part of the loan was used to pay Terry's grandson so that he could buy a house.[6] The loan was paid in full prior to the filling of the petition for divorce.

¶14 Terry passed away on January 26, 2021, before Judge Gibbs ruled on the division of the parties' property. On January 27, Laurie filed a motion to "reopen judgment of divorce and dismiss/vacate judgment of divorce due to death

---

[5] Both parties stipulated that the value of the cabin was $161,000.

[6] Terry and Laurie also both testified to small amounts of marital property that went into the cabin. For example, Laurie testified that $1,000 of marital money was put into the cabin. Terry testified that he installed insulation and a new roof on the cabin, and that he was not compensated for this work. On appeal, Terry does not argue that any of this testimony should alter the analysis of whether the cabin is marital property. We will therefore consider only the loan in our analysis of that issue.

of petitioner."[7] First, Laurie contended that Judge Isaacson had improperly granted the parties a divorce before the close of evidence. Furthermore, Laurie argued that Judge Isaacson improperly granted the divorce "*after* such time as he had determined he had a conflict of interest." In addition, Laurie argued because Terry had passed away, the court lost jurisdiction to proceed with the divorce. On January 28, 2021, Laurie filed a letter preemptively arguing that "it would not be proper for a personal representative in an estate matter to become a party in a pending divorce."

¶15 On February 10, 2021, Terry's attorney filed a "suggestion of death notice and motion and order for substitution of proper party for petitioner," asking for Michelle Thorson, Terry's daughter, to be substituted as the petitioner. Laurie again objected to a personal representative being substituted as a party.[8]

¶16 The parties agreed that Judge Gibbs could issue a ruling on the pending motions without a hearing, and in a February 23, 2021 written decision, Judge Gibbs denied Laurie's motion to "reopen judgment of divorce and dismiss/vacate judgment of divorce due to death of petitioner" and granted Terry's motion to substitute Thorson as the petitioner.[9] Thereafter, in a written decision dated March 4, 2021, Judge Gibbs divided the marital property equally, without

---

[7] Although Laurie argued for Judge Gibbs to reopen the "judgment" of divorce, there was no such judgment at that time. A judgment of divorce was not entered until April 19, 2021. We therefore interpret her motion to be challenging the oral divorce decree.

[8] Although we recognize that the arguments raised on Terry's behalf are now made by his "estate," for ease of reading, we refer to the arguments as if Terry made them directly.

[9] Laurie petitioned for leave to appeal the oral divorce decree and the written order denying her motion to reopen the divorce. We denied her petition, concluding there was no need for interlocutory review because a final and appealable order was forthcoming.

addressing Laurie's request for an unequal division of the marital estate. Regarding the cabin, Judge Gibbs determined that Laurie "received the cabin as a gift, in her name only. She did not put the cabin in joint tenancy." That said, Judge Gibbs found that "joint marital money was used to pay off" the loan. As a result, the court found that "all but $45,000 of the value of the cabin [was] not in the marital estate."

¶17    Judge Gibbs subsequently entered a written "Findings of Fact, Conclusions of Law and Judgment of Divorce" on April 19, 2021. Laurie now appeals from that judgment.

## DISCUSSION

### I. Disqualification waiver

¶18    Laurie first contends that she did not "consent" to Judge Isaacson proceeding with the decision to grant the parties a divorce after he determined that he had a potential conflict of interest.[10] According to Laurie, she was left with a "Hobson's choice."[11] In other words, if she did not consent to Judge Isaacson

---

[10] Terry appears to argue, although not expressly, that Laurie entered into a "consent judgment" at the December 3, 2020 hearing and that, as a result, issues relating to Judge Isaacson's oral ruling granting the parties a divorce are not appealable. While Terry cites case law regarding consent judgments, he does not apply that case law to the facts of this case. As such, the argument is underdeveloped. *See* *M.C.I., Inc. v. Elbin*, 146 Wis. 2d 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988). Even so, we fail to see how we could conclude that Laurie consented to the divorce when Judge Isaacson granted the divorce after only Terry testified to the irretrievable breakdown of the marriage and the impossibility of reconciliation, and the circuit court therefore found the same. Laurie did not enter into a "consent judgment" as framed by Terry.

[11] "A 'Hobson's choice' is 'an apparent freedom of choice when there is no real alternative,' such as being put in the position of having to accept 'one of two or more equally objectionable things.'" *McNally v. Capital Cartage, Inc.*, 2018 WI 46, ¶70 n.3, 381 Wis. 2d 349, 912 N.W.2d 35 (Ziegler, J., dissenting) (citation omitted).

granting the divorce, "Judge Isaacson made clear he was going to keep the case and decide the entire case despite his comments that he was worried about a perceived conflict." Laurie "objected to Judge Isaacson finishing the divorce case, and based on the court's ultimatum, the only way to accomplish that was to agree to [Judge Isaacson] granting the divorce that day."[12]

¶19    We interpret Laurie's argument to be that she did not waive a potential conflict based upon her consent to Judge Isaacson's "ultimatum."[13]    We disagree and conclude that Laurie waived any potential conflict.    WISCONSIN STAT. § 757.19 outlines situations where a judge must disqualify himself or herself from a case.    Under § 757.19(3), however, "[a]ny disqualification that may occur … may be waived by agreement of all parties and the judge after full and complete disclosure on the record of the factors creating such disqualification." Whether a party waived a potential conflict is a question we review for an erroneous exercise of discretion.    *See State v. Demmerly*, 2006 WI App 181, ¶10, 296 Wis. 2d 153, 722 N.W.2d 585 (applying erroneous exercise of discretion

---

[12] Laurie also contends that "the subsequent filing of Dr. Burns' December 4th letter regarding Terry's confusion at the time of the hearing was a legitimate basis on which to move to rescind any purported consent." We disagree. The December 4 letter—from Dr. Burns, not Laurie or her counsel—addressed Terry's competency, not the purported conflict. Furthermore, assuming Laurie is referencing the motion that she filed with the letter, the motion did not move to rescind the conflict waiver.

[13] Laurie does not raise any constitutional due process challenge regarding the purported conflict. For example, she does not argue that Judge Isaacson was unfair to her because of the conflict. *See State v. Herrmann*, 2015 WI 84, ¶25, 364 Wis. 2d 336, 867 N.W.2d 772 ("It is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" (alteration in original; citation omitted)). Nor does she argue that Judge Isaacson was constitutionally required to recuse himself because of the potential conflict. *See Williams v. Pennsylvania*, 579 U.S. 1, 4 (2016) (setting forth standard that "requires recusal when the likelihood of bias on the part of the judge 'is too high to be constitutionally tolerable'" (citation omitted)); *see also Herrmann*, 364 Wis. 2d 336, ¶41. We will therefore not address these issues further.

standard to circuit court's decision to accept criminal defendant's waiver of attorney's conflict).

¶20    We will uphold a discretionary decision if the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Liddle v. Liddle*, 140 Wis. 2d 132, 136, 410 N.W.2d 196 (Ct. App. 1987).  Furthermore, "[a] discretionary decision must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Rohde-Giovanni v. Baumgart*, 2004 WI 27, ¶18, 269 Wis. 2d 598, 676 N.W.2d 452 (alteration in original; citation omitted).  When a circuit court fails to explain its discretionary decision, "we may search the record to determine if it supports the court's discretionary decision." *Randall v. Randall*, 2000 WI App 98, ¶7, 235 Wis. 2d 1, 612 N.W.2d 737.

¶21    Laurie does not argue that Judge Isaacson failed to give both parties a "full and complete disclosure on the record of the factors creating" a potential conflict.  *See* WIS. STAT. § 757.19(3).  In fact, Laurie expressly agreed in the circuit court that Judge Isaacson had no conflict in granting the parties a divorce. During the December 3 hearing, Laurie's counsel stated: "[I]f [Judge Isaacson] divorce[d] them, I don't think that there's a conflict there."  Therefore, Laurie waived any potential conflict.

¶22    Regarding Laurie's argument that she was given a "Hobson's choice"—or, in other words, that her waiver was not voluntary—we conclude her argument mischaracterizes the exchange at the December 3 hearing.  When taken as a whole, it is clear the following occurred.  First, Judge Isaacson checked with

Judge Gibbs, who was willing to take over the entire case starting the following Thursday and preserve the testimony from the December 3 hearing. Both parties initially agreed that this outcome would be acceptable. Terry's attorney then questioned whether the divorce could still be granted on December 3 and revised Terry's position indicating that Terry would agree to adjourn only if the divorce was granted that day. Judge Isaacson initially responded, "I'm going to grant the divorce, whether it's today or next Thursday. And if you think there's something to be gained by waiting until Thursday, I think that's a mistake, but you're going to, then, run the risk of my making a decision today." He later clarified, stating, "If I keep the case today … and I make a decision that [Laurie] thinks is overcompensating because of these appearances that may be prejudicial to her, she's out of luck, as opposed to waiting seven days for a completely independent decision being made."

¶23 Judge Isaacson's responses, when considered alone, may indicate a "Hobson's choice," but when taken together with the rest of the exchange, it is clear that Judge Isaacson would either: (1) "keep the case today and" take the remaining two and one-half hours to finish up or (2) substitute Judge Gibbs into the case and allow the parties "a completely independent decision" to be made the following week on the property division issue. Only after Laurie's attorney stated that she did not think it would be a conflict for Judge Isaacson to decide the judgment of divorce and finish the property division on Thursday did Terry finish his testimony regarding the divorce.

¶24 Moreover, Laurie was not limited to two options. She did not merely have the option of either having Judge Isaacson decide all issues in the divorce action or waiving the conflict in order for Judge Gibbs to adjudicate the property division. Instead, her third option was to object to Judge Isaacson

continuing with the decision as to whether to grant the parties a divorce. Had Laurie done so, Terry's counsel stated he would object to delaying the matter until Judge Gibbs could hear it, which was set to occur the following week. Judge Isaacson advised that he would then proceed to hear all issues. Laurie could then have appealed the conflict issue following the entry of a final judgment or order. Given that Judge Isaacson admitted there was an appearance of bias, Laurie's chances of success on appeal on that issue likely would have been high.

¶25    Laurie did not, however, object to Judge Isaacson proceeding with the decision whether to grant the parties a divorce. Instead, she consented to Judge Isaacson addressing that issue, with the remaining issues to be addressed by Judge Gibbs the following week. Under these circumstances, we conclude Laurie waived any potential conflict and that her waiver was voluntarily made.

## II. Motions

### A. *Laurie's motion to "reopen judgment of divorce and dismiss/vacate judgment of divorce due to death of petitioner."*

¶26    Laurie's motion cited multiple reasons why Judge Gibbs should have reopened the judgment of divorce and dismissed the divorce action. She renews only two of those arguments on appeal, contending that Judge Gibbs should have reopened the judgment of divorce because: (1) Judge Isaacson improperly granted the parties a divorce prior to the close of all the testimony and prior to the

14

disposition of the property division; and (2) Terry passed away prior to the divorce being finalized.[14]

¶27    Laurie again fails to provide any statutory authority in support of her motion.  We could therefore deem her appeal of the motion undeveloped and decline to address this issue.  *See M.C.I., Inc. v. Elbin*, 146 Wis. 2d. 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988) (we need not address undeveloped arguments). Nonetheless, because we conclude that Judge Gibbs did not erroneously exercise his discretion, we will address Laurie's argument on the merits.  It appears that Laurie sought relief under WIS. STAT. § 806.07(1) from Judge Isaacson's decision granting the parties a divorce.  "We review a circuit court's exercise of discretion to grant relief from a judgment under § 806.07 for an erroneous exercise of discretion."  *Franke v. Franke*, 2004 WI 8, ¶54, 268 Wis. 2d 360, 674 N.W.2d 832; *see also Pettygrove v. Pettygrove*, 132 Wis. 2d 456, 461, 393 N.W.2d 116 (Ct. App. 1986).  "[D]iscretion is misused if the [circuit] court misapplies or misinterprets the law."  *Pettygrove*, 132 Wis. 2d at 461.

¶28    First, Judge Gibbs determined that based on *Roeder v. Roeder*, 103 Wis. 2d 411, 308 N.W.2d 904 (Ct. App. 1981), Judge Isaacson correctly bifurcated the divorce proceedings and granted the parties a divorce without first

---

[14] In Laurie's reply brief, she asserts for the first time that she argued in the circuit court that Dr. Burns' letters constituted newly discovered evidence.  After searching the record, we fail to find support for her assertion, and we will therefore not address this issue.  *See Marotz v. Hallman*, 2007 WI 89, ¶16, 302 Wis. 2d 428, 734 N.W.2d 411 ("As a general rule, 'issues not raised in the circuit court will not be considered for the first time on appeal.'" (citation omitted)); *see also A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) (we need not address arguments raised for the first time in a reply brief).

To the extent Laurie raises any other issues not addressed in this opinion, we deem such issues to be undeveloped and therefore decline to address them.  *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

addressing the property division issue. Specifically, Judge Gibbs determined that *Roeder* allows a circuit court to "adjudge the parties divorced and take other issues such as maintenance and property division under advisement but the judgment of divorce is effective immediately."

¶29    In *Roeder*, the divorce petitioner was diagnosed with terminal cancer. *Id.* at 413. On the first day of the scheduled divorce trial, it became clear that certain testimony regarding appraisals would not be completed that day. *Id.* "Both the judge and counsel for [the respondent] voiced concerns about possible prejudice if [the petitioner] died before the matter was completed. However, neither party objected to the [circuit] court's decision to grant the divorce immediately and put over the property division until [roughly two weeks later]." *Id.* Before the property division hearing could take place, the petitioner passed away. *Id.*

¶30    On appeal, we addressed the issue of "whether a divorce may be granted prior to a final disposition of the property division. We h[e]ld that it may, but specifically disapprove[d] of the procedure used by [the circuit] court." *Id.* at 417-18; *see also Czaicki v. Czaicki*, 73 Wis. 2d 9, 21, 242 N.W.2d 214 (1976) (rejecting the appellant's contention that a property division "must be made at the time a divorce is granted").

¶31    Here, as in *Roeder*, the parties were granted a divorce before the final disposition of the property division. Similarly, as in *Roeder*, neither party in this case objected to Judge Isaacson deciding whether to grant the parties a divorce that day and set aside the property division issue for a future date. Lastly, both the circuit court in *Roeder* and Judge Isaacson here faced similar, unusual circumstances—the parties seeking divorce in both cases had terminal cancer and

were likely to pass away before the end of the divorce proceedings. *Cf. **Johnson v. Johnson***, 37 Wis. 2d 302, 310, 155 N.W.2d 111 (1967) ("*[A]bsent special circumstances* the date of the granting of the divorce is the proper time for the determination of the value of the estate for the purposes of a property division." (emphasis added)). As such, Judge Gibbs did not erroneously exercise his discretion by concluding, in reliance on ***Roeder***, that Laurie was not entitled to relief on the grounds that Judge Isaacson improperly granted the parties a divorce prior to the disposition of the property division.

¶32 Second, Laurie contends that Judge Gibbs erroneously exercised his discretion by denying her motion to dismiss the divorce and instead allowed the divorce to continue after Terry's death. We addressed a similar issue in both ***Roeder*** and ***Pettygrove***. In ***Roeder***, the respondent argued that the judgment of divorce was void because the petitioner passed away prior to the division of property. ***Roeder***, 103 Wis. 2d at 416-17. As relevant here, under WIS. STAT. § 767.35(1), a circuit court "shall grant a judgment of divorce or legal separation" when certain requirements are met, including that the court has found that "the marriage is irretrievably broken" and "has considered and approved or made provision for … the disposition of property."[15] ***Id.***; *see also **Roeder***, 103 Wis. 2d at 416-17.

---

[15] In ***Roeder v. Roeder***, 103 Wis. 2d 411, 415, 308 N.W.2d 904 (Ct. App. 1981), we relied on a previous version of WIS. STAT. § 767.35—then codified as WIS. STAT. § 767.07—which is different from the current version in minor ways, none of which are relevant to this appeal.

We also note that WIS. STAT. § 767.35(1) was amended by 2021 Wis. Act 35. The amendment is not relevant to this appeal.

¶33 We concluded in **Roeder** that WIS. STAT. § 767.35 was not a jurisdictional statute and did not prevent the circuit court from granting the parties a divorce prior to considering the property division. **Roeder**, 103 Wis. 2d at 417. Based on the text of the statute, we reasoned that "[t]he statement that 'if A, B and C are present, a court shall grant a divorce' is an entirely different matter from 'the court cannot grant a divorce unless A, B and C are present.'" **Id.** We concluded the former statement was the correct reading of the statute. **Id.** Accordingly, the divorce was not void simply because the circuit court had not yet addressed the property division as discussed in § 767.35 before the petitioner passed away. **Roeder**, 103 Wis. 2d at 417.

¶34 In **Pettygrove**, the petitioner testified at a deposition but he was shortly thereafter diagnosed with terminal cancer. **Pettygrove**, 132 Wis. 2d at 458. His daughter was appointed guardian, and a divorce hearing was held. **Id.** At that hearing, the guardian was the last witness to testify for the petitioner's case. **Id.** at 459. Around 11:50 a.m., the guardian testified about the petitioner's critical physical condition, stating that his doctors did not expect him to survive through the day. **Id.** The petitioner's counsel immediately requested that a judgment of divorce be granted. **Id.** The respondent objected, arguing that there were still unresolved property division issues. **Id.** In response, the circuit court, "noting that it had been advised in advance of trial that the case would take only half a day, declined to separate the pronouncement of divorce from the property settlement." **Id.** at 459-60. The respondent rested her case at around 2:30 p.m., and the court took a recess. **Id.** at 460. The court ultimately granted the judgment of divorce at around 3:10 p.m. **Id.** It was later determined that the petitioner passed away at 2:05 p.m. **Id.** The respondent subsequently asked the court to vacate its judgment

of divorce. ***Id.*** The court vacated the judgment after it determined that it did not have the authority to grant a judgment of divorce after one party died. ***Id.***

¶35 On appeal, we analyzed whether the circuit court properly exercised its discretion under WIS. STAT. § 806.07(1)(d), which allows a court to grant a party relief from a void judgment. "[W]hen one party to a divorce proceeding dies during the pendency of the action, the cause of action abates and the court loses jurisdiction." ***Pettygrove***, 132 Wis. 2d at 461. As such, we held that "[b]ecause [the petitioner's] cause of action was still pending at the time of his death, the [circuit] court did not err in vacating its subsequent judgment of divorce." ***Id.*** at 462.

¶36 Similar to the circuit court's handling of the proceedings in ***Roeder***, the circuit court in this case was not prevented from finishing the divorce proceedings after Terry passed away. Unlike the petitioner in ***Pettygrove***, Terry did not pass away before Judge Isaacson granted the parties a divorce. As such, Judge Isaacson retained the authority to grant the judgment of divorce on December 3. Furthermore, all of the testimony was concluded by the time of Terry's death. The only issue remaining was for Judge Gibbs to render a decision regarding the property division.[16] We therefore conclude that Judge Gibbs did not erroneously exercise his discretion by denying Laurie's motion for relief from Judge Isaacson's decision granting the parties a divorce.

---

[16] In the circuit court, Laurie argued that, after Terry's death, there was still an issue requiring testimony regarding a safety deposit box. She does not renew this contention on appeal, and we will therefore not address it.

B. *Terry's "motion and order for substitution of proper party for petitioner."*

¶37    In the circuit court, Laurie objected to Terry's attorney's motion to substitute Thorson as the petitioner after Terry's death. Laurie argued that Terry's attorney lacked authority to act on behalf of Terry; that third parties are not proper parties to a divorce action; that Thorson was not a personal representative of Terry's estate; and that Laurie never received proper notice of Terry's death. Aside from mentioning Terry's attorney's motion as an issue on appeal, Laurie does not address the motion at all in her briefing. We therefore conclude that Laurie has failed to develop any argument regarding Judge Gibbs' granting of the motion to substitute Thorson as the petitioner, and we refuse to develop any argument for her. *See Elbin*, 146 Wis. 2d. at 244-45.

## III.  Competency

¶38    The competency of a party is governed by WIS. STAT. § 803.01(3)(a), which states:

> [I]f a party is … alleged to be incompetent, the party shall appear by an attorney, by the guardian of the estate of the party who may appear by attorney, or by a [GAL] who may appear by an attorney. A [GAL] shall be appointed in all cases in which the … individual alleged to be incompetent has no guardian of the estate, in which the guardian fails to appear and act on behalf of the ward or individual adjudicated incompetent, or in which the interest of the minor or individual adjudicated incompetent is adverse to that of the guardian.

If the appointment of a GAL is "after the commencement of the action, it shall be upon motion entitled in the action." Sec. 803.01(3)(b)4. "The hearing on the motion … under subd. 4 … may be held without notice and the appointment made by order. If the motion or petition is made for … an individual … alleged to be

incompetent who is an adverse party, the hearing shall be on notice." Sec. 803.01(3)(b)5. We "review [a circuit] court's competency determination[] as a question of fact under the clearly erroneous standard." *Kainz v. Ingles*, 2007 WI App 118, ¶21, 300 Wis. 2d 670, 731 N.W.2d 313.

¶39 Laurie contends that Terry was clearly incompetent at the December 3 hearing and that the circuit court's failure to conduct a hearing and appoint a GAL pursuant to WIS. STAT. § 803.01(3)(a) should result in the judgment of divorce being reopened.[17] Terry argues that Laurie did not raise the issue of Terry's competency until after his testimony was completed and Judge Isaacson had granted the parties a divorce. According to Terry, testimony taken prior to the issue of competency being raised is preserved and not stricken under *Withers v. Tucker*, 32 Wis. 2d 496, 145 N.W.2d 665 (1966). Further, Terry argues that Dr. Burns' letters demonstrate that Terry was, in fact, competent at the December 3 hearing.

¶40 In *Withers*, a personal injury case, our supreme court concluded that a circuit court did not err by refusing "to set aside all proceedings in which plaintiff appeared without a [GAL] occurring prior to plaintiff's claim of mental incompetence."[18] *Id.* at 499. The defendant in *Withers* filed a "motion for an

---

[17] On appeal, Laurie comments on Judge Isaacson's purported failure to properly consider "all relevant factors," including Terry's alleged incompetency, when analyzing the irretrievable breakdown of the marriage under WIS. STAT. § 767.315(1)(b). Laurie failed to raise this argument before the circuit court, and we therefore deem it forfeited. *See Dickau v. Dickau*, 2012 WI App 111, ¶32, 344 Wis. 2d 308, 824 N.W.2d 142.

[18] Laurie does not address Terry's argument related to *Withers v. Tucker*, 32 Wis. 2d 496, 145 N.W.2d 665 (1966). We could therefore deem Laurie to have conceded that *Withers* is controlling. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond to respondent's argument may be taken as concession). We will address the merits of the issue, however, because we ultimately conclude that the circuit court did not err in its competency determination.

(continued)

order setting aside the judgment … on the ground the plaintiff was mentally incompetent and was not represented by a [GAL]." *Id.* at 497. The motion was filed over a year after the court issued a judgment dismissing the defendant's employer and its insurance company from a personal injury case. *Id.* at 498. The court denied the defendant's motion to set aside all prior proceedings, but because the judgment only dealt with two of the three defendants, the court appointed the plaintiff a GAL, "so that the motion could be made and heard and because the action [was] still pending against [one] defendant." *Id.* at 500, 502.

¶41 On appeal, our supreme court held that "[a] minor must always appear by his [or her] guardian, while a mental incompetent is not required to have or appear by a guardian until such time as the court is aware of his [or her] incapacity." *Id.* at 499. Therefore, the court held that there was

> no obstacle … either by common law or under the Wisconsin statutes to the maintenance of an action by an incompetent person and that the proper course for courts to pursue, when it becomes apparent that a plaintiff by reason of his insanity cannot safely protect his rights in the litigation, is to appoint a [GAL] … and direct the case to proceed, not to dismiss the case and deny all hearing.

*Id.* at 499-500.

¶42 We conclude that *Withers* is controlling and the circuit court was not required to disregard Terry's December 3 testimony. Had the motion been raised prior to Terry's testimony, the court would have been required to appoint a GAL

---

We also note that at the time *Withers* was decided, a similar version of WIS. STAT. § 803.01 existed, which provided that "[w]hen a … judge has reason to believe that a party is mentally incompetent …, he [or she] must appear either by the general guardian of his property or by a [GAL] who is an attorney appointed by the court or by a judge thereof." *See Withers*, 32 Wis. 2d at 499.

and conduct a hearing under WIS. STAT. § 803.01(3) if Terry were going to testify again. But because Terry's competency was not raised until after Terry had testified at the December 3 hearing, *Withers* controls, and the court was not required to comply with § 803.01(3).

¶43 Regardless, to the extent Judge Gibbs would have been required to retroactively analyze Terry's competence on December 3, we disagree that his finding that Terry was competent was clearly erroneous. Judge Gibbs reviewed the December 3 transcript, Laurie's attorney's affidavit, and Dr. Burns' letters. Based on those materials, the court found that Terry was competent during the time of his December 3 testimony. "Under the clearly erroneous standard, 'even though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding.'" *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530 (citation omitted). Further, "we search the record … for evidence supporting" the court's decision. *Id.* We fail to find any evidence in the record to lead us to conclude that Judge Gibbs' competency finding is so incorrect that no reasonable person could make the same finding.

## IV. Property division

¶44 The division of marital property is left to the sound discretion of the circuit court. *McReath v. McReath*, 2011 WI 66, ¶21, 335 Wis. 2d 643, 800 N.W.2d 399. Conversely, classifying property as divisible or non-divisible "involves both fact finding and legal questions, but it does not involve the exercise of discretion." *Derr v. Derr*, 2005 WI App 63, ¶¶9-10, 280 Wis. 2d 681, 696 N.W.2d 170. We review a circuit court's findings of fact under the clearly

erroneous standard, *see* WIS. STAT. § 805.17(2), and legal questions de novo, *see Weiss v. Weiss*, 122 Wis. 2d 688, 692, 365 N.W.2d 608 (Ct. App. 1985).

### A. *The circuit court erroneously exercised its discretion by failing to address Laurie's request for an unequal division of property.*

¶45     Laurie contends that the circuit court erroneously exercised its discretion because it did not address either her request for an unequal property division, nor any of the factors in WIS. STAT. § 767.61(3).   Conversely, Terry argues that the court's March 4 written decision adequately addressed "each item of marital property whose disposition was contested" and "set forth its reasoning for its award for that item to a particular party."

¶46     Under WIS. STAT. § 767.61(3), there is a presumption of an equal division of property after a judgment of divorce.  *See also* **McReath**, 335 Wis. 2d 643, ¶24.  "Despite the presumption of equal division, the [circuit] court has the discretion to alter the distribution after considering [the] numerous factors" listed in § 767.61(3).  **McReath**, 335 Wis. 2d 643, ¶24.  The factors include, for example, the length of the marriage, the age and physical and emotional health of the parties, and each party's earning capacity.  *See* **id.**, ¶24 n.13. Section 767.61(3) has been interpreted to require a circuit court to consider all of the factors listed under § 767.61(3) prior to ordering an unequal division of property.  *See* **LeMere v. LeMere**, 2003 WI 67, ¶¶21-22, 262 Wis. 2d 426, 663 N.W.2d 789.

¶47     We note, however, that when a circuit court addresses a request for an unequal property division, WIS. STAT. § 767.61(3) does not require the court to consider every factor listed if the court ultimately declines to order an unequal property division.  That said, a court is still required to explain its reasons for not

granting a requested unequal property division. *See **Parrett v. Parrett***, 146 Wis. 2d 830, 845-47, 432 N.W.2d 664 (Ct. App. 1988) (circuit court erroneously exercised its discretion when it failed to explain its reasons for not granting a security interest to, inter alia, support property division awards); *see also **State v. Scott***, 2018 WI 74, ¶38, 382 Wis. 2d 476, 914 N.W.2d 141 ("When a circuit court exercises its discretion, it must explain on the record its reasons for its discretionary decision 'to ensure the soundness of its own decision making and to facilitate judicial review.'" (citation omitted)).

¶48     We agree with Laurie that the circuit court erroneously exercised its discretion by neither addressing nor explaining its decision regarding Laurie's request for an unequal property division. Laurie requested an unequal property division due to her disability that prevented her from working, her low income due to her disability, and her loss of insurance that she received through Terry. Nowhere in the circuit court's March 4 decision did the court address Laurie's request for an unequal property division. Even after independently reviewing the record, there is no evidence that the court considered this issue such that there would be a basis upon which we could affirm. Therefore, we reverse and remand for the court to address Laurie's request for an unequal property division and to make the necessary findings related to that request.

B. *The circuit court incorrectly determined that Terry was entitled to a $45,000 property interest in the cabin.*

¶49    Laurie next argues that the circuit court incorrectly declared a portion of the cabin's value to be marital property.[19]  We agree.

¶50    "The general rule is that assets and debts acquired by either party before or during the marriage are divisible upon divorce." *Derr*, 280 Wis. 2d 681, ¶10.  WISCONSIN STAT. § 767.61(2) provides exceptions to this general rule, and, as relevant to this case, states that "any property shown to have been acquired by either party prior to … the marriage [as a gift from a person other than the other party] shall remain the property of that party and is not subject to a property division."  Sec. 767.61(2)(a)1.  "When a party to a divorce asserts that property, or some part of the value of property, is not subject to division, that party has the burden of showing that the property is non-divisible at the time of the divorce." *Derr*, 280 Wis. 2d 681, ¶11; *Brandt v. Brandt*, 145 Wis. 2d 394, 407, 427 N.W.2d 126 (Ct. App. 1988) (burden of proof to show that property is non-divisible is proof to a reasonable certainty by the greater weight of the credible evidence).

¶51    The party asserting that property is a non-divisible gift "must establish:  (1) the original gifted or inherited status of the property; and (2) that the character and identity of the property has been preserved." *Wright v. Wright*, 2008 WI App 21, ¶12, 307 Wis. 2d 156, 747 N.W.2d 690; *Trattles v. Trattles*, 126 Wis. 2d 219, 225, 376 N.W.2d 379 (Ct. App. 1985).  "Identity," also referred to as "tracing," "addresses whether the gifted or inherited asset has been preserved in

---

[19] We note, as did Laurie in her briefing, that Terry failed to address Laurie's argument related to the cabin on appeal, and we could interpret this failure as a concession.  *See United Coop.*, 304 Wis. 2d 750, ¶39.  That said, we will address the merits of Laurie's argument because we ultimately conclude that the circuit court erred in its characterization of the cabin.

26

some present identifiable form so that it can be meaningfully valued and assigned." *Derr*, 280 Wis. 2d 681, ¶15 (citation omitted). "Character," also referred to as "donative intent," "involves no more and no less than determining whether the owning spouse intended to donate non-divisible property to the marriage, that is, did the owning spouse have donative intent." *Id.*, ¶23. Wisconsin case law has identified four instances that create a rebuttable presumption of donative intent: (1) "Transferring non-divisible property to joint tenancy"; (2) "Depositing non-divisible funds into a joint bank account"; (3) "Using non-divisible funds to make purchases for the family"; and (4) "Using non-divisible funds to make payments on a mortgage debt that was incurred to acquire jointly owed real estate." *Id.*, ¶¶34-38.

¶52     It is undisputed that Laurie received the cabin as a gift. It also is undisputed that the cabin has been preserved in its same physical form since it was gifted to Laurie. *See **Splinder v. Spindler***, 207 Wis. 2d 327, 339, 558 N.W.2d 645 (Ct. App. 1996); *see also **Derr***, 280 Wis. 2d 681, ¶18. Thus, the issue on appeal is not related to tracing, but instead to Laurie's donative intent.

¶53     The circuit court found that Laurie did not transfer the cabin into a joint tenancy and that finding is not clearly erroneous. Nor does the cabin fit into any of the other three circumstances that create a rebuttable presumption of donative intent. *See **Derr***, 280 Wis. 2d 681, ¶¶34-38. The question therefore becomes whether Laurie evidenced donative intent in some other fashion.

¶54     On this issue, our decision in *Derr* is instructive. In *Derr*, the husband's parents had gifted him an apartment building while he was married to the other party. *Id.*, ¶¶3-4. The husband was the only individual titled on the building. *Id.*, ¶4. Years later, the parties, while married, "borrowed $300,000 and

27

used this borrowed money for the benefit of the marriage." *Id.* The sums were obtained through a "mortgage equity loan using [the husband's] apartment building as collateral. The mortgage note indicated that the loan was made to both [parties], and mortgage payments were made with marital funds." *Id.* (footnote omitted). At the time of the divorce, the outstanding principal balance on the mortgage loan was roughly $280,000 and the fair market value of the building was roughly $900,000. *Id.* The circuit court characterized the building, and the accompanying debt, as the husband's non-divisible asset. *Id.*, ¶6.

¶55 We affirmed the circuit court's decision on appeal and held that "without more, the act of putting property at risk by using it as collateral for a marital loan does not create a presumption that the owning spouse intended to donate part or all of the property to the marriage." *Id.*, ¶62. Specifically, we held that the husband's "act of putting his building at risk to secure the mortgage loan d[id] not evince an intent to give all or part of his building to the family." *Id.*, ¶62. This type of "use" is "far different than disposing of an asset in order to make a purchase for the family." *Id.*, ¶61; *cf. Trattles*, 126 Wis. 2d at 222, 225 (holding the value of cash gifts wife received during marriage was divisible property when it was "used to purchase household furnishings and effects, to pay for normal and usual household expenditures, to pay for repairs, maintenance and improvement to the home the parties owned in joint tenancy, and to make various mortgage payments on the home").

¶56 Like the spouses in *Derr*, Laurie and Terry used Laurie's gifted cabin as collateral for a loan. Similarly: (1) only one party was on the title; (2) both spouses' names were on the loan; (3) payments were made using marital funds; and (4) there is nothing else in the record (including Laurie's subjective intent) that shows Laurie wanted to give the cabin to the family by using it as

collateral. Under ***Derr***, Judge Gibbs' conclusion that the cabin had in part become marital based on the fact that joint marital money was used to pay off the loan was in error. As such, Laurie met her burden of showing that the cabin was non-divisible property, and Terry's estate is not entitled to a $45,000 marital property interest in the cabin.

¶57 No costs awarded to any party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.